COMMONWEALTH *vs.* PEDRO ALMEIDA.

Suffolk.     May 5, 1977. — August 29, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & LIACOS, JJ.

*"Threshold" Police Inquiry.    Constitutional Law,* Search and seizure. *Search and Seizure.*

The totality of circumstances known to two police officers in a cruiser warranted a conclusion that they constitutionally initiated an investigation of a defendant who was sitting alone in an automobile in a high crime area of a city late at night with the engine running and the headlights off and parked in a private parking space not in the defendant's area; support for a reasonable belief by the officers that

their safety was threatened was supplied by actions of the defendant when he did not immediately produce the automobile registration on demand and twisted in his seat at a time when his hands could not be observed. [270-272]

Following a permissible initiation of an investigation by two police officers in a cruiser of a lone defendant who was ordered out of an automobile when he could not produce its registration but who was not under arrest, the scope of the search conducted by one of the officers was within constitutional limits where it appeared that he opened the door of the vehicle, did not enter it, leaned into its interior and saw a gun holster, swept his hand underneath the front seat and brought into full view the holster and a full clip of ammunition, and looked into a console between the front seats and found therein a fully loaded automatic pistol and another loaded clip. [272-273]

Two COMPLAINTS received and sworn to in the Municipal Court of the City of Boston on July 9, 1976.

On appeal to the Superior Court, a pre-trial motion to suppress evidence was heard by *Silverman, J.,* a District Court judge sitting under statutory authority.

An application by the defendant for an interlocutory appeal was allowed by *Liacos, J.,* in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him.

*Pamela Taylor* (*Roger Geller* with her) for the defendant.

*John Glynn,* Special Assistant District Attorney (*James M. Lynch,* Legal Assistant to the District Attorney, with him) for the Commonwealth.

HENNESSEY, C.J.   On September 3, 1976, the defendant Pedro Almeida was found guilty after trial in the Municipal Court of the City of Boston on two complaints: one charging him with unlawful possession of a firearm under G. L. c. 269, § 10, and another charging him with possession of a firearm with the serial number defaced under G. L. c. 269, § 11C. The defendant appealed to the Superior Court, and a District Court judge, sitting in that court under statutory assignment, heard and denied a motion to suppress all evidence which was seized from the automobile which the defendant was operating on the date of the alleged offenses. A single justice of this court granted, pur-

suant to G. L. c. 278, § 28E, the defendant's request for appeal from the order denying the motion to suppress.

We conclude that there was no error in the ruling and order of the judge below.

We have before us a transcript of the evidence presented at the hearing on the motion. The judge's findings of fact, all of which were warranted on the evidence, were as follows. Officer Michael Feeney has been a police officer in the Boston police department for about eleven years, over ten of which have been spent in district four on night patrol. On July 9, 1976, about 12:10 A.M. he was on routine patrol in a marked cruiser with his partner, Officer Erickson. They were proceeding on Back Street from Arlington Street towards Massachusetts Avenue. Back Street is located between Beacon Street and Storrow Drive. It is a private way with access to Storrow Drive, is a one-lane road and abuts the parking area for the apartment houses facing on Beacon Street. Parking is restricted to tenants.

Officer Feeney knew from his own personal knowledge that this was a high crime rate area for all crimes ranging from breaking and entering to murder.

While proceeding on Back Street and in the vicinity of Fairfield Street Officer Feeney observed a new 1976 Ford station wagon parked in the parking area behind an apartment house the front of which faced Beacon Street. The car was facing in the direction of Arlington Street with its lights out and its motor running.

The cruiser stopped alongside the car and Officer Feeney asked the defendant, who was alone in the car, if everything was all right. The defendant replied, "Yes." The officer then asked if the defendant was from that area and he replied, "No." The defendant was then questioned as to whether he owned the car and whether he had a license and registration for it. He told the officer that the car was borrowed but that he had both license and registration.

Officer Feeney testified that he could see a key in the ignition, had not observed a traffic violation, but wanted to check the defendant's papers. He therefore requested Officer Erickson to back up the cruiser so that he could alight

from it. As the cruiser backed up Officer Feeney observed the defendant twist his body toward the right, but he could not see his hands. While he had no reason to suspect the defendant had a weapon, he feared for his safety and as he alighted from his vehicle he drew his revolver, pointing it toward the ground. He approached the defendant's vehicle and asked him to produce his license and registration. Officer Erickson remained in the cruiser for the purpose of checking to see if the car was stolen.

The defendant reached into a console which was located between the driver and the passenger seats, lifted its cover to a height just sufficient for him to get his hand in and removed a wallet therefrom. He extracted from his wallet his license and handed it to Officer Feeney. When some fifteen seconds later he did not produce a registration, Officer Feeney ordered the defendant out of the car. By that time Officer Erickson had alighted from the cruiser and assisted the defendant from the car. He took him to the front of it. At the same time Officer Feeney opened the passenger side door and leaned into the car. The inside of the car was lighted as a result of the doors being open. He saw protruding from underneath the front seat about two inches of an object he recognized as a gun holster. He then put his hand underneath the seat, made a sweeping motion and brought out the holster which was empty and a fully loaded clip of ammunition. While Officer Feeney believed that Officer Erickson had already conducted a "pat-down" search of the defendant, as soon as he saw the holster and clip he shouted to Officer Erickson to hold him.

Officer Feeney then looked in the console by opening the top and found therein a fully loaded Browning automatic pistol plus another loaded clip. He removed all items from the car.

The defendant was then placed under arrest and given the Miranda warnings. No further conversation ensued between the parties.

The Commonwealth apparently concedes, and we think correctly, that the search here was not made on the basis

of probable cause.[1] Rather the argument is that this search was justified under the "stop and frisk" principles first set forth in *Terry* v. *Ohio,* 392 U.S. 1 (1968). It is settled that in appropriate circumstances a *Terry* type search may extend into the interior of an automobile. *Adams* v. *Williams,* 407 U.S. 143, 145-149 (1972). *Commonwealth* v. *Silva,* 366 Mass. 402, 405-408 (1974).

Accordingly, we consider the case under "stop and frisk" principles. In *Commonwealth* v. *Silva, supra* at 405, we said: "In 'stop and frisk' cases our inquiry is two-fold: first, whether the initiation of the investigation by the police was permissible in the circumstances, and, second, whether the scope of the search was justified by the circumstances. In both aspects the inquiry relates to whether the police conduct was reasonable under the Fourth Amendment, and there is 'no ready test for determining reasonableness other than by balancing the need to search [or seize] against the invasion which the search [or seizure] entails.' "

We turn now to the first of these dual inquiries: whether the search for weapons here was constitutionally initiated. We consider whether the circumstances were suspicious enough to justify a "stop" or "investigation," and suspicious enough to warrant a reasonable belief that the person investigated might be armed with a dangerous weapon. As to the police officer's privilege to stop and question a suspected person, we have consistently sustained the right of the officer to make a threshold inquiry where suspicious conduct gives the officer reasonable ground to suspect that a person has committed, is committing, or is about to commit a crime. See *Commonwealth* v. *Silva, supra* at 405, and cases cited. As to the search itself we have said that, although probable cause need not be shown, even the limited search for weapons, which is ordinarily character-

---

[1] Thus, we do not consider the long line of cases applying the exigent circumstances and probable cause to search analysis beginning with *Carroll* v. *United States,* 267 U.S. 132 (1925). Nor was the instant search made incident to a valid arrest. See *United States* v. *Robinson,* 414 U.S. 218 (1973).

ized by a "pat-down" of the outer clothing of the suspect, is a serious intrusion on the sanctity of the person and is not to be undertaken lightly. *Terry* v. *Ohio, supra* at 17. However, in applying hindsight to the officer's actions, we think it crucial to remember as shown by many tragic climaxes to threshold police inquiries, "the answer might be a bullet." *Terry* v. *Ohio, supra* at 33 (Harlan, J., concurring).

Again referring to *Silva,* we said at 406: "In following the constitutional standards of *Terry* v. *Ohio, supra,* we have required that the police officer's action be based on specific and articulable facts and the specific reasonable inferences which follow from such facts in light of the officer's experience. A mere 'hunch' is not enough. Simple good faith on the part of the officer is not enough. The test is an objective one. While the officer need not be absolutely certain that the individual is armed, the basis for his acts must lie in a reasonable belief that his safety or that of others is at stake. *Terry* v. *Ohio, supra* at 27. Essentially, the question is whether a reasonably prudent man in the policeman's position would be warranted in the belief that the safety of the police or that of other persons was in danger."[2]

We apply these principles to the facts of this case. The defendant was sitting alone in an automobile in a high crime district late at night (cf. *Adams* v. *Williams, supra; Commonwealth* v. *Albano, ante,* 132, 133 [1977]) with the

---

[2] The emphasis here is that the justification, since probable cause is not shown, is based on safety and supports a protective search for weapons only. In the *Silva* case, in holding that the seized contraband should be suppressed from evidence, this court stressed that the intrusion there was clearly a search for evidence rather than a protective search for weapons. 366 Mass. at 410.

Compare the language in *Adams* v. *Williams,* 407 U.S. 143, 145 (1975), which was decided under *Terry* principles, where it is said: "The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape." This wording on its face seems to be an expansion of the careful limits of *Terry,* but read in context with other language of the opinion, it is undoubtedly intended to justify only a protective search.

engine running and the headlights off. The vehicle was parked in a private parking space, although the defendant stated he was not from that area and offered no other explanation. The defendant stated he did not own the vehicle and produced his operator's license on demand by lifting the cover of a console on the seat just high enough to get his hand in and remove a wallet but did not immediately produce the vehicle registration on demand. At one point the defendant twisted to the right in the seat at a time when the policeman could not observe his hands. At the time that the search took place, the police had not yet learned whether the vehicle was stolen. In sum, we think that the totality of circumstances known to the police warranted the "stop" and supported the reasonable belief of the police that their safety was threatened during the "stop."

We turn next to the second of the dual inquiries: whether the scope of the search was within constitutional limits. We have considered this issue at length in the *Silva* case, *supra* at 407-411, and there is no necessity to repeat that discussion here. In summary, we said in *Silva* that the search is confined to what is minimally necessary to learn whether the suspect is armed and to disarm him once the weapon is discovered. We also said that a *Terry* type of search may extend into the interior of an automobile so long as it is limited in scope to a protective end. Thus the search must be confined to the area from which the suspect might gain possession of a weapon.

As in the *Silva* case, the defendant was not in the automobile at the time it was searched. Nevertheless, like the defendant in *Silva*, he was not under arrest at the time of the "pat-down" search of his person, and there was no assurance that he would not be returning promptly to his seat behind the wheel of the automobile. The police officer opened the door of the vehicle, did not enter the vehicle but leaned into the interior, and saw what he recognized as a gun holster protruding from beneath the front seat. He then swept his hand underneath the seat to bring into full view the holster and a full clip of ammunition. The

search of the console, which was located on the front seat, and the discovery of the gun, followed immediately.

We conclude that the scope of the intrusion of the searching officer into the automobile was justifiable in the circumstances shown, and well within the *Terry* concept.

There was no error in the denial of the defendant's motion to suppress from evidence the gun and other objects seized from the vehicle. Further proceedings are to be had in the Superior Court in accordance with this opinion.

*So ordered.*