COMMONWEALTH vs. DANTE FERRARA.

Middlesex. September 13, 1978. — September 29, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Search and Seizure. Evidence*, Illegally seized material. *"Threshold"
Police Inquiry. Constitutional Law*, Search and seizure.

Where the operator of an automobile stopped by State troopers pro-
duced a valid license and registration at the troopers' request and
where there were no grounds for inferring that either the operator
or his passengers were involved in the commission of a crime, sei-
zure of evidence discovered when the troopers ordered the occu-
pants out of the car was illegal. [504–505]

COMPLAINTS received and sworn to in the First District
Court of Eastern Middlesex on November 3, 1976.

On appeal to the Superior Court a pretrial motion to
suppress evidence was heard by *McGuane*, J., a District
Court judge sitting under statutory authority.

An application for an interlocutory appeal was allowed
in the Supreme Judicial Court for the county of Suffolk
by *Kaplan*, J., and the appeal was reported by him.

*Paul D'Agostino* for the defendant.

*William L. Pardee*, Assistant District Attorney, for the
Commonwealth.

BRAUCHER, J. In a defendant's interlocutory appeal
pursuant to G. L. c. 278, § 28E, we are asked to review the
constitutionality of a stop of the automobile he was driv-
ing and of the ensuing search. Following *Commonwealth
v. McCleery*, 345 Mass. 151, 153 (1962), we hold that, once
the driver produced a valid license and registration, the
police had no authority to order the passengers out of the
car. In the circumstances, it follows that the defendant's
motion to suppress the evidence discovered as a result of
that order should have been granted.

The defendant was charged with several crimes, and he moved to suppress a revolver, ammunition, and metallic knuckles seized in a search of the automobile. The judge denied the motion. A single justice of this court granted the defendant's application for an interlocutory appeal and reported the case, without decision, to the full court.

We summarize the evidence, relying primarily on the judge's findings. Shortly after noon on November 3, 1976, two State troopers were on surveillance duty in an unmarked vehicle outside a cleaning establishment in Somerville. The owner of the cleaners' was under investigation in connection with the theft of a tractor trailer unit containing 44,000 pounds of coffee. The defendant arrived in a vehicle with two passengers. He went into the cleaners' three times in a few minutes, carrying nothing. The first two times he came out and spoke to the passengers. The third time he drove away, and the troopers followed. The passenger in the back seat looked back at the police two or three times and then leaned forward toward the two occupants of the front seat. The troopers recognized the defendant, and a check revealed that his wife was the registered owner. The defendant traveled at a normal rate of speed and committed no observed traffic violations. After two or three miles, he made a sharp right turn in Everett, and the troopers then stopped him.

The troopers were not in uniform. One identified himself and asked the defendant for his license and registration; the other asked the passengers for identification. The defendant produced a valid license and registration; the passengers gave names but produced no identification. The second trooper ordered the passengers out of the car, saw a handgun in the back seat, and took possession of it. All three denied knowledge of the gun and were placed under arrest. A frisk of the three disclosed that the front-seat passenger had a second gun. A ski mask or cap and metal knuckles were found under the front seat. One of the troopers said he would get a warrant to search the rest of the car, and the defendant said, "Go ahead and

search. I don't care." A third gun was found in the trunk.

1. *The stop.* The judge's findings eliminate motor vehicle violations and car theft as bases for the stop. Cf. *Commonwealth* v. *Ling,* 370 Mass. 238, 240-241 (1976) (car theft); *Commonwealth* v. *Cavanaugh,* 366 Mass. 277, 278 (1974) (traffic offenses); *Commonwealth* v. *Hawkes,* 362 Mass. 786, 788 (1973) (same). But "we have consistently sustained the right of the officer to make a threshold inquiry where suspicious conduct gives the officer reasonable ground to suspect that a person has committed, is committing, or is about to commit a crime." *Commonwealth* v. *Almeida,* 373 Mass. 266, 270 (1977). The officer's action must "be based on specific and articulable facts and the specific reasonable inferences which follow from such facts in light of the officer's experience." *Commonwealth* v. *Silva,* 366 Mass. 402, 406 (1974). We have applied this analysis "in upholding the stopping of an automobile in order to conduct such an inquiry." *Id.* at 405, and cases cited. *Commonwealth* v. *Ling, supra.*

In the present case the Commonwealth has not been able to articulate specific facts and inferences that warranted the intrusion. We assume that the summary identification of the crime being investigated·was adequate, but no attempt was made to show the connection of the owner of the cleaning establishment with that crime. The judge properly struck the unresponsive testimony of an officer that an individual involved with the cleaners' had "definite organized crime connections." The defendant testified that he had been convicted of larceny and related charges arising out of a search of his truck in April, 1976, but there was no testimony that the officers knew of those charges at the time of the stop. The facts that the defendant went into the cleaners' three times, that an occupant of his car looked back at an unmarked car following him closely, and that the defendant made a sharp right turn provide a slender basis for asking him to identify himself. We see no basis for interrogation of his passengers. Cf. *Commonwealth* v. *Dirring,* 354 Mass. 523, 531 (1968) (arrest of person in company of suspect).

In the view we take of the case, it makes no difference whether the stop was proper. We therefore assume, without deciding, that the judge correctly ruled that "the police officers were justified in stopping the vehicle to inquire about the operator's license and registration."

2. *The scope of the inquiry.* If the stop was justified, the officers could take reasonable precautions for their own protection. Such precautions may include ordering occupants out of a car for questioning. *Pennsylvania* v. *Mimms,* 434 U.S. 106, 111 (1977). They may also include a search extending into the interior of an automobile, but they are "confined to what is minimally necessary to learn whether the suspect is armed and to disarm him once the weapon is discovered." *Commonwealth* v. *Almeida,* 373 Mass. 266, 272 (1977).

In the present case, the officers interrogated the occupants before ordering them out of the car. Once the defendant had produced a valid license and registration, there was no basis for further interrogation and no need for further protective precautions. We dealt with a like situation in *Commonwealth* v. *McCleery,* 345 Mass. 151, 153 (1962): after verification of the driver's license and registration, the record suggests no purpose in ordering occupants out of the car other than to continue illegal interrogation or to make an illegal search; apart from the interrogation and search, no reason appears why they should not have been permitted to continue on their way. Cf. *Commonwealth* v. *McGrath,* 365 Mass. 631, 632 (1974) (search beyond a mere pat-down).

3. *The fruits.* All the evidence in issue is traceable to the handgun seen when the passengers left the car. Since they were illegally ordered out of the car, the evidence must be suppressed. *Commonwealth* v. *McCleery, supra. Commonwealth* v. *Spofford,* 343 Mass. 703, 708 (1962).

4. *Conclusion.* The order of the judge denying the motion to suppress evidence is reversed. The case is remanded to the Superior Court Department for further proceedings consistent with this opinion.

*So ordered.*