COMMONWEALTH vs. MARTIN J. LOUGHLIN
(and a companion case[1]).

Worcester. September 15, 1981. — January 13, 1982.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Search and Seizure*, Automobile, Threshold police inquiry, Consent.

Although a State trooper who had observed a vehicle at 1 A.M. in the break-
down lane of a highway with its distress signals flashing was entitled to
make an initial inquiry and to take reasonable precautions for his safety,
once the driver had produced a valid license and registration and the
passenger had identified himself, the trooper had no basis for ordering
the occupants out of the automobile or conducting a pat-frisk of the
passenger; the subsequent consent of the driver to a search of the auto-
mobile was tainted by the trooper's illegal conduct and evidence seized
from the automobile should have been suppressed. [61-64] HENNES-
SEY, C.J., concurring; NOLAN, J., with whom LYNCH, J., joins, dis-
senting.

COMPLAINTS received and sworn to in the First District
Court of Southern Worcester on November 16, 1977.

Upon appeal to the Superior Court, the cases were heard
by *Gettens*, J., a District Court judge sitting under statutory
authority.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Lynn Morrill Turcotte*, Assistant District Attorney, for
the Commonwealth.

*Michael F. Natola* for the defendants.

WILKINS, J. We consider again the propriety of a police
search of a motor vehicle. The defendants were convicted
of possession of a controlled substance (marihuana) with in-
tent to distribute. In their appeals, they challenge the denial

---

[1] Commonwealth vs. Thomas R. Searles.

of their motions to suppress evidence seized in the search of the rear area of the vehicle on an interstate highway in Sturbridge. The trial judge made no detailed findings of fact but ruled from the bench, at the close of the hearing on the motions to suppress, that the search was consensual.

On the defendants' postconviction appeal, the Appeals Court reversed the judgments. See *Commonwealth* v. *Loughlin*, 11 Mass. App. Ct. 1040 (1980). In a brief accompanying order, that court stated that "the motions to suppress were improperly denied *(Commonwealth* v. *Ferrara*, 376 Mass. 502, 505 [1978])." The Appeals Court further stated that "the evidence which was not subject to [the] motions was such as to make inappropriate the entry of a judgment for either defendant at this time (contrast *Commonwealth* v. *Spofford*, 343 Mass. 703, 707-708 [1962])." We granted the Commonwealth's application for further review. We agree that the motions to suppress should have been allowed.[2]

We summarize the evidence presented at the hearing on the motions to suppress. Shortly before 1 A.M. on November 16, 1977, a State police trooper observed a vehicle with its distress signals flashing in the breakdown lane of Route 86, a six-lane divided highway in a poorly lit, deserted area of Sturbridge. He pulled his cruiser up behind the vehicle, a Chevrolet El Camino with a flatbed instead of a rear seat. The flatbed was covered by a canvas, loose at one corner. The defendant Loughlin was standing at the right rear of the vehicle and, as the cruiser stopped, Loughlin walked quickly toward the open passenger door and entered the vehicle. The defendant Searles, who was sitting in the driver's seat, quickly ducked out of sight. He then jumped from the vehicle and came rapidly toward the trooper. Searles gave the trooper his license and registration and, at the offi-

---

[2] In argument before us, the Commonwealth conceded that, if the motions to suppress were allowed, the defendants would be entitled to judgments in their favor. For this reason, unlike the Appeals Court where the concession apparently was not made, we order judgments for the defendants rather than simply reversing the judgments and setting aside the judge's findings.

cer's bidding, returned to his seat. The trooper asked Lough-
lin for identification. He gave his name and address but did
not produce other identification. The trooper looked around
outside the vehicle. He then ordered Loughlin from the
vehicle and "pat-frisked" him. In response to questioning,
Loughlin said that bulges in his pockets were cigarettes. The
"cigarettes" turned out to be wads of money. The trooper
then ordered Searles out of the car and commanded the two
men to lean "spread eagle" over the front of the vehicle. He
asked if there were any weapons in the vehicle. Searles said,
"No weapons. You can check." The trooper searched the
inside of the vehicle and found no weapons. He then asked
if there were weapons in the back of the vehicle. Searles
said, "No, you can check." In the course of a search, the
marihuana was found.

The principles expressed in *Commonwealth v. Ferrara,*
376 Mass. 502, 505 (1978), are controlling, as the Appeals
Court ruled. We have no doubt that the trooper was entitled
to make an initial inquiry in the circumstances. He was
entitled as well, if the facts warranted a reasonable person
to believe that the defendants were armed and presently
dangerous, to take reasonable precautions for his safety.
However, once Searles had produced a valid license and
registration and Loughlin had identified himself, any justi-
fiable investigation was complete. "[T]here was no basis for
further interrogation and no need for further protective pre-
cautions. . . . [T]he record suggests no purpose in ordering
[the] occupants out of the car . . . [and] no reason appears
why they should not have been permitted to continue on
their way." *Id.* See *Commonwealth v. McCleery,* 345
Mass. 151, 153 (1962). Compare *Commonwealth v. Farm-
er,* 12 Mass. App. Ct. 961 (1981) (exit order held proper be-
cause it occurred before justified threshold inquiry).[3]

---

[3] On the basis of the suspiciousness of the defendants' actions, the dissent
argues that the officer's exit orders were proper. The propriety of those
orders, however, does not rise and fall with the level of suspiciousness; no
amount of suspicion short of probable cause could save an exit order that
*follows* the justifiable threshold inquiry. The relevant distinction between

Because the evidence in issue was traceable to the illegal pat-frisk of Loughlin and the illegal orders that the defendants leave the car, it must in these circumstances be suppressed as the "fruit of the poisonous tree." See *Commonwealth* v. *Ferrara, supra* at 505. The record does not show sufficient attenuation of the illegal search of Loughlin and the illegal seizure of each defendant to warrant a finding that Searles's consent was an act of free will, unaffected by the taint of the illegality. See *Brown* v. *Illinois*, 422 U.S. 590, 603-604 (1975).[4] The trooper did not advise Searles of his right to

---

*Commonwealth* v. *Almeida*, 373 Mass. 266 (1977), and the *Ferrara* cases is not in degree of suspiciousness. It is in the order of events.

We note further that had the exit orders preceded the inquiry, we would have had to remand the matter for further findings of fact regarding such issues as the reasonableness of the trooper's suspicions and his need for precautions, before validating the search. The dissent shortcuts this procedure by making findings, favorable to the Commonwealth, on these issues. Moreover, it decides without discussion other points raised in the defendants' appeals.

Contrary to the views of the dissent, the suspicions of criminal activity in the *Ferrara* case were at least as warranted as those in this case. The decision in this case involves no expansion of the exclusionary rule but rather its evenhanded application. Doubt about the wisdom of the views of the Supreme Court of the United States on the subject of illegal searches and seizures, expressed in the last paragraph of the dissent, hardly justifies ignoring those views when Fourth Amendment issues are raised in this court.

[4] The principles governing the admissibility of a confession given after an illegal arrest are appropriately applied to determine the validity of "consent" given after an illegal search or seizure. See, e.g., *United States* v. *Perez-Esparza*, 609 F.2d 1284, 1288-1291 (9th Cir. 1979) (suppressed); *United States* v. *McCaleb*, 552 F.2d 717, 721 (6th Cir. 1977) (suppressed); *United States* v. *Bazinet*, 462 F.2d 982, 989-990 (8th Cir.), cert. denied sub nom. *Knox* v. *United States*, 409 U.S. 1010 (1972) (remanded with instructions to trial court to consider what have since become some of the *Brown* factors); *State* v. *Wrightson*, 391 A.2d 227, 229 (Del. Super. Ct. 1978) (suppressed); *State* v. *Mitchell*, 360 So.2d 189, 191 (La. 1978) (suppressed) (4-3 opinion); *Commonwealth* v. *Collini*, 264 Pa. Super. Ct. 36, 46-48 (1979) (suppressed). See also 2 W. LaFave, Search and Seizure § 8.2(d) (1978 and Supp. 1981); 3 W. LaFave, § 11.4(d), at 644; W. Ringel, Searches and Seizures, Arrests and Confessions, § 9.3 (b) (6) (2d ed. 1980).

refuse to consent to the search. No significant time elapsed between the illegality and the "consent." No intervening event occured that dissipated the effect of the illegality.

The findings of the trial judge are set aside, the judgments are reversed, and judgments shall be entered for the defendants.[5]

*So ordered.*

HENNESSEY, C.J. (concurring). In light of the careful analysis in the opinion of the court, this concurring opinion would be surplusage if it were not for the expression of the dissenters that the court here unnecessarily expands the protection of the Fourth Amendment. This is not so; the result reached by this court follows the careful limits mandated by the Supreme Court of the United States. Probably most judges share the dissenters' disappointment and frustration in cases like this, when evidence procured by police "hunch" or intuition must be suppressed. Nevertheless, responsive to the clear teachings of the Supreme Court, we should observe that the Fourth Amendment protects not only the defendants in this case but also the many other persons who that evening stopped their vehicles at the side of high-speed highways with distress lights flashing and, unlike the defendants, had no contraband concealed in their vehicles.

Several principles arise out of the Fourth Amendment, as construed by the United States Supreme Court. "Probable cause" is the pivotal principle. Only if there is probable cause for the police to believe that the defendant has com-

---

[5] At the hearing on the motions to suppress, the Commonwealth did not challenge the standing of the defendant Loughlin, the passenger, to object to the search of the vehicle. Presumably, the parties assumed automatic standing under *Jones* v. *United States*, 362 U.S. 257 (1960). Where the issue of standing was not raised at the trial court level, we decline to give retroactive effect to opinions of the United States Supreme Court that have established new principles governing standing for Federal constitutional purposes. See *Rawlings* v. *Kentucky*, 448 U.S. 98, 105-106 (1980); *United States* v. *Salvucci*, 448 U.S. 83, 95 (1980).

mitted or is committing an offense may a search warrant be issued or, in some instances, may a search be conducted without a warrant. *Beck* v. *Ohio*, 379 U.S. 89 (1964). *Commonwealth* v. *Haas*, 373 Mass. 545, 555 (1977), and cases cited. See *Chimel* v. *California*, 395 U.S. 752 (1969); *Warden* v. *Hayden*, 387 U.S. 294 (1967). If probable cause does not appear, but there are "articulable facts" of a suspicious nature which permit the police to stop and question a person, the police may do a "pat-down" search during the questioning. *Terry* v. *Ohio*, 392 U.S. 1, 21 (1968). This pat-down is solely for the protection of police during the confrontation, and is directed solely toward concealed weapons.

The Commonwealth does not contend, nor could it reasonably contend, that probable cause was shown in the early stages of this confrontation. Nevertheless, as the opinion of the court here demonstrates, the police procedure, early on, was not merely for the protection of the officer during the questioning of the two men, but was clearly a search for evidence. *Commonwealth* v. *Almeida*, 373 Mass. 266 (1977), upon which the dissenting Justices rely, is markedly distinguishable from this case. In the sequence of events in that case the officer was not exceeding his limited self-protection privileges when he discovered the contraband. Our opinion in *Commonwealth* v. *Silva*, 366 Mass. 402 (1974), upon which the dissenters also rely, likewise emphasizes the limited self-protection aspect of a "pat-down" search in the absence of probable cause to arrest. I think it is clear from *Almeida* and *Silva*, and related cases, that the court is vitally concerned with preserving the right of policemen to stop and frisk for weapons in order to ensure their safety. It is just as plain that the stop and frisk privileges must not be used as a pretext to justify full searches, in the absence of probable cause and contrary to the Fourth Amendment.

Finally, the dissenters express their conviction that illegally obtained evidence should not be suppressed, but rather that the overreaching police should be disciplined. This thought relates to a debate of long-standing, and many

persons, probably including many judges, agree with the dissenters' point of view. Nevertheless, once more, this court has no option; the exclusion of evidence in such cases has been mandated by the Supreme Court.


NOLAN, J. (dissenting, with whom Lynch, J., joins). Because I believe that the trial judge correctly denied the defendants' motions to suppress evidence, I dissent from the opinion of the court.

I do not agree that *Commonwealth* v. *Ferrara*, 376 Mass. 502 (1978), is dispositive of the case. The actions of the defendant in *Ferrara*, prior to the time the police stopped his vehicle, were considerably less suspicious than those actions involved here. In *Ferrara*, the defendant went three times into a cleaning establishment that was under police surveillance and then he drove away in his automobile. The police followed closely in an unmarked automobile and an occupant of the defendant's vehicle looked back at them. When the defendant made a sharp turn on the street, the police stopped the vehicle. That was the extent of the defendant's suspicious activity. This court held that once the defendant had produced a valid license and registration there was no basis for further interrogation and no need for further protective precautions. *Id.* at 505. The majority also enlist support from *Commonwealth* v. *McCleery*, 345 Mass. 151 (1962). That case is inapposite because the vehicle in *McCleery* was stopped for a routine check.

The defendants' actions in the present case were more suspicious than those involved in *Ferrara* or *McCleery* and invited more scrutiny. It was about 1 A.M. when the vehicle was observed in the breakdown lane of a highway, with its distress signals flashing, in a deserted section of Sturbridge. As the State police cruiser approached, the defendant Loughlin, who had been standing at the right rear of the vehicle, walked quickly to the passenger door and got into the vehicle. The defendant Searles, who was sitting in the driver's seat, quickly ducked out of sight. He then jumped

from the vehicle and came rapidly toward the State police trooper. I think it is clear that these movements could reasonably have led the trooper to suspect criminal activity on the part of the defendants. A case closer to the mark is *Commonwealth* v. *Almeida,* 373 Mass. 266 (1977). In *Almeida* this court held that the police were warranted in searching the defendant's vehicle for weapons because the defendant was sitting in an automobile parked in a high crime district late at night with the car engine running and the headlights turned off.

We have consistently sustained the right of the police to make a threshold inquiry where suspicious conduct gives the police reasonable ground to suspect criminal activity on the part of a defendant. See *Commonwealth* v. *Silva,* 366 Mass. 402, 405 (1974), and cases cited. We have also held consistently that, once a "stop" has been effected, a limited protective search for weapons is justified if the circumstances support the reasonable belief of the police that their safety is threatened during the "stop." *Commonwealth* v. *Almeida, supra* at 272. *Commonwealth* v. *Silva, supra* at 405, and cases cited.

In the case before us, the lateness of the hour, the deserted area, and the erratic behavior of the defendants justified the trooper's belief that his safety might be threatened. The court lays great stress on the importance of the order of events. It seems to conclude that whatever suspicion was engendered by the defendant's walking hurriedly to his vehicle's open passenger door as soon as the police cruiser stopped and by Searle's peculiar conduct wound down to nothing once the defendant gave the trooper his name and address. Apparently, the court rules that this gesture of identification by the defendant (though unsupported by any written verification and coming as it did only seconds after the suspicious behavior) acts as a catharsis. This "order of events" approach does not square with reality. The trooper's impression of suspicious conduct by the defendant before the defendant furnished his name and address has a continuing effect. It perdured to that point in time when the trooper

issued his order to exit the vehicle. It was not necessarily dissipated by a rite of passage such as responding orally with a name and address. The court suggests that this identification has the talismanic effect of removing all need for "protective precaution." This approach does not ring true in the real world of a trooper faced with two men acting suspiciously at 1 A.M. See *Pennsylvania* v. *Mimms*, 434 U.S. 106, 111 (1977). Accordingly, in these circumstances he was justified in ordering Loughlin out of the vehicle and pat-frisking him to determine whether he was armed. *Terry* v. *Ohio*, 392 U.S. 1, 27 (1968). Upon discovering a large sum of money in large and small denominations on Loughlin, the trooper suspected that a robbery had been committed, which justified an inquiry about the possible existence of weapons in the vehicle. When the trooper inquired if there were weapons in the vehicle, Searles said, "No weapons. You can check." By extending this permission to search, Searles validly consented to the ensuing search of the vehicle. See *Commonwealth* v. *Cantalupo*, 380 Mass. 173, 176 (1980). The trial judge found that the search was consensual. That finding is supported by the evidence presented at the hearing on the motion to suppress.

I maintain that the initial "stop," the ordering of the defendants out of the vehicle, and the subsequent pat-down of the defendants did not infringe on any of the defendants' constitutional rights but, instead, were justified by the trooper's reasonable appraisal of the situation. I further hold that the subsequent search of the vehicle for weapons was conducted with valid consent. Therefore the judge correctly denied suppression of the fruits of that search. I would affirm the defendants' convictions.

I cannot resist adding an epilogue. For twenty years, State courts have been required to accommodate their jurisprudence to an exclusionary rule which was fashioned with the hope that more scrupulous attention would be paid to the precious rights of the Fourth Amendment to the United States Constitution. *Mapp* v. *Ohio*, 367 U.S. 643, 655 (1961). We can only applaud the zeal with which these

rights are protected. However, the wisdom of a rule excluding evidence instead of punishing the violator of these rights is, at the very least, questionable. State courts are bound to follow this rule but we are not required to expand it as the court in this case is doing.