Toomey, J.
BACKGROUND
On March 15, 1994, defendant was arrested for a controlled substance offense in Sturbridge, Massachusetts. He had been operating a motor vehicle on Route 84 and, after the vehicle was stopped by the State Police, Candelaria was found to be in possession of more than 100 grams of cocaine. On May 4, 1994, the Worcester County Grand Jury returned an indictment accusing defendant of Trafficking in Cocaine (100-200 grams). Defendant has filed and now presses a motion to suppress evidence of the cocaine on the grounds that the police conduct on Route 84, by which they obtained the cocaine, was violative of defendant’s right to be secure from unreasonable searches and seizures under the United States and Massachusetts Constitutions.
FACTS[1]
1. While operating his motor vehicle in the east bound lanes of Route 84 in Sturbridge, Massachusetts, defendant caused the vehicle to cross a marked lane without engaging the required directional signal. Trooper Baxter observed the crossing from his marked cruiser.
2. Trooper Baxter also observed a child moving about, without restraints, in the rear seat area of defendant’s vehicle.
3. By use of his blue lights, the trooper caused defendant to bring his motor vehicle to a halt in the breakdown lane of Route 84. The cruiser was positioned directly to the rear and one vehicle length behind defendant’s vehicle.
4. The night was dark and the area unilluminated, but the cruiser’s headlights and spot light were focused on defendant’s rear view mirror.
5. The Trooper approached the driver’s side of the vehicle, requested production of the operator’s license and registration and received the license from defendant and the registration from the female passenger (Puentes). The registration certificate recited that the vehicle was owned by a “Feliciano.” The trooper had no conversation with defendant because, as Puentes told the trooper, he spoke no English.
*489 6. The license was current and recited defendant’s name. The registration was appropriately related to the vehicle. The trooper made no radio check of either document.
7. While engaged in obtaining the documents and inspecting them, the trooper noted a strong odor of alcohol emanating from the interior of the vehicle. He was unable to determine whether the odor came from the operator. The odor was that of a “dark malt liquor.’’
8. The trooper moved to the passenger side of the vehicle and spoke with Puentes concerning ownership of the vehicle registered to neither occupant. The odor of alcohol was still apparent to Trooper Baxter from his new position. Additionally, the trooper observed, in plain view in the rear area of the vehicle, two unopened liquor bottles protruding from a paper bag on the left seat and, on the floor, an open, empty, dark-hued bottle.[2]
9. In order to ascertain the source of the alcohol odor and determine whether the non-English speaking operator was impaired, the trooper asked Puentes and the child to exit from the vehicle. After brief conversation to the right rear of the vehicle, he determined that the alcohol odor was not associated with Puentes.
10. While conversing with Puentes, the trooper observed defendant looking over his right shoulder toward the trooper and making a reaching movement toward his waist. After directing Puentes and the child to the rear seat of the cruiser, the trooper approached again the driver’s side of the vehicle.
11. At the driver’s door, the trooper ordered, by hand gestures, defendant to exit in order to determine whether he was the source of the alcohol odor; the trooper intended to subject defendant to the usual field sobriety tests.
12. As defendant complied, the trooper observed a bulge in the crotch area of defendant’s pants. Concerned that the bulge might conceal a handgun, the trooper drew his weapon and ordered defendant to stand at the rear of the vehicle. There, the trooper touched the bulge from outside the defendant’s clothes. Its solid consistency, size[3] and shape suggested to Trooper Baxter that it might indeed be a weapon.
13. The trooper ordered the defendant to unzip his fly, seized the package revealed thereby and concluded, from its appearance, that it contained crack cocaine.
14. Defendant was placed under arrest.
DISCUSSION
The stop of defendant’s vehicle by Trooper Baxter was justified by his observations of its marked lane violation[4] and its unrestrained child passenger.[5] The observations of the odor of alcohol, the opened but empty bottle in the vehicle, and the erratic course of the vehicle on the road provided adequate reason for the trooper to inquire further with respect to whether or not the operator was under the influence. And, when it became apparent, from his inquiry of Puentes, that she was not the source of the odor, the trooper’s focus on defendant became all the more reasonable.
The exit order to defendant was a legitimate prelude to a field sobriety test, the appropriateness of which was established by the trooper’s observations. Neither Commonwealth v. Ferrara, 376 Mass. 502 (1978), nor Commonwealth v. Loughlin, 385 Mass. 60 (1981), support defendant’s thesis that only probably cause — con-cededly not present prior to the instant exit order — could validate the exit order after the documentary examination raised no questions as to vehicle ownership, operator license, et cetera. Both Ferrara and Loughlin condemned exit orders after negative document checks because no other reason for further inquiry was presented to the officers issuing the exit orders.
At bar, however, other reasons for concern as to the lawfulness of defendant’s operation had indeed surfaced as a result of Trooper Baxter’s observations both before the stop (marked lanes violation) and after the stop (odor of alcohol as to which passenger was not the source and empty bottle). Because the observations by Trooper Baxter were made after a valid stop and from a locus — outside the vehicle — which did not invade an area in which defendant had a reasonable expectation of privacy, his observations were lawful, Commonwealth v. Figueroa, 412 Mass. 745, 749 n.6 (1992), and provided a sufficient reason to voice or, in this case, to gesture the exit order. Thus, Ferrara and Loughlin are not fatal to the exit order subjudice.
As defendant complied with the legitimate exit order, the trooper noted the uncommon bulge at his crotch. That observation, when linked with the trooper’s observation moments earlier of defendant’s furtive .movements to his waist as the trooper queried Puentes, created articulable suspicion that defendant was armed. Pennsylvania v. Mimms, 434 US 106, 112 (1977); Commonwealth v. Johnson, 413 Mass. 598, 600-02 (1992). A pat frisk upon such suspicion was lawful and resulted in Trooper Baxter’s feeling a solid object of half cantaloupe size. The size and heft of the object, when again conjoined with the furtive movements, suggested the strong probability that defendant was armed with a handgun. Commonwealth v. Hawkes, 362 Mass. 786, 788-90 (1973). The location of the probable handgun constituted probable cause to believe that its possessor did not hold the appropriate permit and the circumstances did not allow for the trooper’s obtaining a search warrant. Accordingly, the search of the crotch by the trooper was lawful, as upon probable cause and exigent circumstances, and its fruits — the crack cocaine — were properly seized. See, Smith, Criminal Practice And Procedure, 30 Mass. Prac., §308, n.4 and cases cited.
*490 CONCLUSION
For the foregoing reasons, the motion to suppress is DENIED.

 The findings hereunder are based on the credible evidence adduced at the August 16, 1994 hearing upon the motion.

 The empty bottle had contained “Malta” a liquid with low (0.005) alcohol content, but with a pungent, malt-like odor. The child had consumed the contents during the trip from New York City. The odor of the contents (of a sample bottle of Malta) was similar to the odor noted by the trooper as he stood outside both the right and left front doors of defendant’s vehicle.

 The Trooper described the bulge as of a size similar to “one-half a cantaloupe.”

 G.L.c. 90, §14B.

 G.L.c. 90, §7AA. While G.L.c. 90, §13A does preclude “enforcement” of the restraint law in circumstances where a stop for another offense has not occurred, §13A is, by its terms, inapplicable to §7AA — the child restraint law. A stop solely as a result of a violation of §7AA is thus not barred by §13A. And, even were §13A applicable to §7AA violations, the “no enforcement” mandate of §13A seems focused upon the penalty to be exacted on account of a violation of the restraint law. Merely stopping a violator to counsel him or her as to the policies expressed in §7AA is not an “enforcement” within § 13A and such a stopping would not be ultra vires the officer’s authority.