Garsh, J.
INTRODUCTION
The defendant, Sabino Flores, Jr. (“Flores”), moves to suppress cash seized from his person and contraband seized from the ground following his arrest. The defendant also seeks to suppress a statement made at the scene of the arrest and a statement made during his booking at the police station. Flores has been charged •with possession of cocaine with intent to distribute, subsequent offense, possession of marijuana, and assault and battery on a police officer. As grounds for his motions, the defendant asserts that there was no probable cause to arrest him and, thus, that the physical evidence and statements must be suppressed as “fruit of the poisonous tree.” In addition, the defendant argues that his statements must be suppressed because no Miranda warnings were given.
An evidentiary hearing was held. For the reasons set forth below, the Motion to Suppress is DENIED and the Motion to Suppress Statements of Defendant is ALLOWED in part and DENIED in part.
FINDINGS OF FACT
Based on all the credible evidence and all reasonable inferences drawn from that evidence, the court finds the following facts:
At approximately 7 p.m. on April 3, 1995, Mark Donahue (“Donahue”), an officer on routine patrol with the Cambridge Police Department, noticed the defendant in the rear of 1 Jefferson Park on property that was part of Jefferson Park. Jefferson Park, an area with which Donahue was quite familiar, is a housing development managed by Cambridge Housing Authority. It consists of five or six three-story brick multi-family dwellings, brick courtyards, and parking lots. “No trespassing” signs are posted on every building, and there are lights throughout the development.
Donahue knew the defendant by name. When he saw him, he radioed to communications to ascertain if Flores’ name appeared on the “no trespass” list published by Cambridge Housing Authority. Donahue understood that the Housing Authority maintained a written list of all persons forbidden to be on Cambridge Housing Authority property for various reasons. He was personally familiar with the list. Hearing his inquiry, several officers called him with the information that Flores’ name, indeed, was on the list. In addition, a Cambridge police dispatch officer responded with the information that Flores’ name was on the list.
The information communicated to Donahue was correct. As of April 3, 1995, the Cambridge Housing Authority’s “No Trespass List,” dated March 15, 1995, contained the name “Flores, Sabino" and the initials “JP,” standing for Jefferson Park, under the heading “Development.”
The “no trespass” list is an alphabetical listing of persons reflecting, inter alia, the reason why each individual on the list has been ordered not to trespass upon one or more Cambridge Housing Authority properties and the date such person was notified by letter. With respect to Flores, the list stated that the reason was “drug arrest” and that the “date issued” was August 7, 1992.
As of April 1995 and earlier, there were no written policies or procedures governing who was to be ordered by Cambridge Housing Authority not to trespass. Names were placed on the list without prior notice or the opportuniiy to be heard in opposition to being placed on the list. After the decision was made by Cambridge Housing Authority to put a person’s name on the list, it was custom and practice for a written notice to be sent to that person and, in addition, to the Cambridge Housing Authority’s security office and legal department, as well as to the Cambridge Police Department.[1]
After confirming that Flores was not permitted to be at Jefferson Park, Donahue and his partner, Officer Grainger (“Grainger"), who were both in uniform, returned to the area and tried to locate him. Approximately ninety minutes after receiving confirmation that Flores’ name appeared on the “no trespass” list, Donahue observed Flores in front of 2 Jefferson Park. He saw him enter the front door of that building with another individual, ignoring the “no trespass” sign in front of the building.
Donahue and his partner followed Flores. They did so because they believed that the defendant was trespassing and for no other reason. They saw him climb stairs to the second floor and, as the person with *494 Flores placed a key into a second floor door with the defendant standing next to him, Donahue called out to the defendant, intentionally using an incorrect name as a ruse to induce Flores not to enter the apartment. In response, Flores moved back towards the edge of the stairs which the officers were climbing, protesting that he was not who they thought he was. When Donahue came closer to Flores, he told him that he knew who he was and that he was under arrest because his name was on the no trespass list. No Miranda warnings were given.
The officers escorted Flores to the first floor, at which time Donahue reached for handcuffs. When he did so, Flores tried to break away; he lowered his head and shoulder and lunged at Grainger, striking him mid-chest and knocking him outside the door. Donahue grabbed Flores’ jacket to stop him from fleeing and an outdoor struggle ensued, with Flores on the ground in the dirt, his arms flailing about and striking Grainger. The defendant’s layers of baggy clothing exacerbated the handcuffing task. At that point Donahue was under arrest for assault and battery on a police officer as well as for trespass, although this fact was not communicated to Flores during the struggle.[2] During the time Flores was on the ground, Donahue saw him reach into his pockets and place his hands behind his head in the dirt.
Donahue radioed for help, and two other officers arrived. With their assistance, Flores was handcuffed and escorted to a police cruiser. Donahue brushed aside the dirt where knuckle marks were visible in the ground where Flores’ head had been. In the dirt Donahue found and seized two clear plastic bags. Based on his training and experience, he believed that one bag contained marijuana and that the other contained individually wrapped packages of crack cocaine.
Donahue returned to the defendant with the two bags he had seized and pat-frisked him forweapons. Donahue felt a lump in Flores’ pocket and brought it out. It was a large quantity of bills folded over totaling approximately one thousand dollars; Donahue seized the money as evidence. When he did so, Flores spontaneously protested, saying: “What are you doing with my money? That’s my money.” Neither Donahue nor any of the other officers asked Flores any questions about the money, the drugs he had found, or anything else. None of the officers at the scene gave Flores his Mirandarights before or after the remark about the money was made.
At the police station, during booking, Flores was asked his name, address, and employment status. He said that he did not currently have a job. The Commonwealth has not demonstrated that Flores was notified of his Miranda rights before being asked any of the booking questions.
The trespass arrest was not deliberately aimed at encouraging the defendant to commit a crime that would give the police probable cause to effect an arrest on grounds other than trespass and to conduct a search following such arrest. The police did not arrest Flores for trespass because they suspected he was in possession of controlled substances and hoped to find evidence. The trespass arrest was not deliberately aimed at encouraging the defendant to incriminate himself.
RULINGS OF LAW
Physical Evidence
The Commonwealth argues that the evidence found on the defendant’s person need not be suppressed because it was uncovered during a search incident to an arrest. A search incident to an arrest may be made only when the arrest itself is based on probable cause. The Commonwealth bears the burden of establishing that the actions of the police met constitutional standards because the arrest of Flores and the subsequent search were undertaken without a warrant. Commonwealth v. Sumerlin, 393 Mass. 127, 128-29 n.1 (1984), cert. denied, 469 U.S. 1193 (1985).
The defendant argues that the physical evidence must be suppressed because the list maintained by the Cambridge Housing Authority violates the defendant’s rights to due process of law, freedom of association and freedom of travel, as guaranteed by the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution and Articles 12 and 14 of the Massachusetts Declaration of Rights[3] and, therefore, does not constitute a permissible basis upon which to rest probable cause that Flores had committed the crime of trespass. It then follows, the defendant maintains, that all the evidence seized subsequent to the trespass arrest must be suppressed as “fruit of the poisonous tree." Wong Sun v. United States, 371 U.S. 471, 488 (1963).
This court need not decide whether the lack of any formal procedure renders the list unconstitutional, or whether a housing authority constitutionally may forbid a person from accompanying a tenant into that tenant’s residence, because it does not follow that, if the arrest was improper, all evidence seized after the arrest necessarily constitutes “fruit of a poisonous tree.” “The Court will not pass upon a constitutional question although properly presented ... if there is also present some other ground upon which the case may be disposed of. . . Thus, if a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter.” Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 347 (1935) (Brandeis, J., dissenting in part).
After Flores was informed that he was under arrest, but before any search was conducted, Flores attacked a police officer. Once he did that willful and voluntary act, the direct observations by the officers provided a wholly independent reason to believe that the defendant had committed a crime, namely assault and battery upon a police officer, and thus provided independent probable cause to arrest Flores. The detention of Flores after the attack upon the officer was lawful *495 whether or not the arrest for treaspass can withstand constitutional scrutiny, and the defendant does not argue otherwise. Indeed, the defendant concedes that illegally placing a defendant under arrest is not a defense to the crime of assault and battery upon a police officer, G.L.c. 265, §13D. Commonwealth v. Moreira, 388 Mass. 596, 601 (1983) (“[I]n the absence of excessive or unnecessary force by an arresting officer, a person may not use force to resist an arrest by one he knows or has good reason to believe is an authorized police officer, engaged in the performance of his duties, regardless of whether the arrest was unlawful in the circumstances”). See also Commonwealth v. McCrohan, 34 Mass.App.Ct. 277, 282 n.4 (1993).
Instead, the defendant argues that, even if he could be arrested and charged with the crime of assault and battery on a police officer, any evidence uncovered in a search incident to that arrest must be suppressed because initially he had been illegally detained. Nothing in Wong Swi requires the police to forego conducting a search incident to arrest of a defendant following the commission of a crime of violence simply because the initial detention may have been without probable cause. Quite to the contrary, in Wong San the Supreme Court declined to “hold that all evidence is ‘fruit of the poisonous tree’ simply because it would not have come to light but for the illegal actions of the police.” Wong Sun, 371 U.S. at 487-88. The crucial question is “whether . . . the evidence . . . has been come at by exploitation of. .. [the primary] illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Id. at 488.
Adopting the logic of Wong Sun, the Supreme Judicial Court has held “[e]vidence obtained subsequent to unlawful police conduct does not automatically become sacred and inaccessible.” Commonwealth v. Fredette, 396 Mass. 455, 459 (1985). A sufficient causal connection between the illegal act and the evidence is not established merely because, “but for” the illegal conduct, the evidence would not have been discovered. Commonwealth v. Borges, 395 Mass. 788, 795 (1985). Instead, to determine whether the connection between the evidence seized and the improper conduct is sufficiently attenuated so as to dissipate the taint, three factors must be weighed together: the temporal proximity of the improper arrest to seizure of the evidence, the presence of intervening circumstances, and the purpose and flagrancy of the misconduct. Id. at 795-796. See also Brown v. Illinois, 422 U.S. 590, 603-04 (1975). While the seizure of the evidence happened soon after the initial detention, the other factors do not tip towards suppression.
The attack by the defendant upon one of the officers was an intervening event that “broke the chain of causation and dissipated the taint of the prior illegality.” Commonwealth v. King, 389 Mass. 233, 245 (1983) (commission of new, “unrelated” crime after an illegal arrest may provide the basis for a valid arrest and search, and evidence uncovered in such a search need not be suppressed). As in King, the intervening act by Flores provides the basis not simply for detaining the defendant but also for conducting a search. “The attack by the [defendant] rendered the troopers’ subsequent actions appropriate. The chain between the evidence seized and the illegal scope of inquiry was broken by the [defendant’s] wrongful actions. Up to the occurrence of those actions, no evidence had been discovered or seized. The evidence was not discovered as a result of police misconduct, but rather as the result of the [defendant’s] assault on the officers ... a new situation arose creating probable cause to arrest the defendant . . . and to conduct a search of the defendant incident to that arrest.” Id.[4]
Furthermore, the conduct of the officers was not flagrant. The police did not arrest Flores because they suspected that he was in possession of contraband and hoped to find evidence. Nor did they intend to violate Flores’ constitutional rights. Suppression of the evidence in this case would not deter illegal arrests because it is irrational to assume that a police officer would purposefully arrest an individual in the hope that, before he is searched, the detained individual will injure the officer, thereby giving the officer justifiable cause to search.
Accordingly, the attack upon Grainger provided an independent basis to search the person of Flores. The cash seized as evidence is not “fruit of the poisonous tree” even though, had the defendant not been arrested for trespass, he undoubtedly would not have assaulted Grainger that evening.
The contraband seized also need not be suppressed. It was abandoned by the defendant after he committed actions that furnished probable cause to arrest him for assault and battery upon a police officer. Seizure of abandoned property without a warrant is not unreasonable because the defendant forfeited any expectation of privacy. See, e.g., Commonwealth v. Jones, 21 Mass.App.Ct. 910, 912 (1985) (property concealed in cruiser by lawfully arrested suspect may be seized).
The issue is not whether the owner has voluntarily relinquished his interest in the property but, rather, whether he has relinquished any reasonable expectation of privacy. This case does not present a situation where items were discarded while the police were illegally detaining or chasing an individual. E.g., Commonwealth v. O’Laughlin, 25 Mass.App.Ct. 998 (1988) (rescript). At the point when the defendant abandoned the bags, there was probable cause to detain him for assault and battery upon a police officer. Flores abandoned any reasonable expectation of privacy when he discarded the contraband by secreting it in the dirt in front of the housing complex where anyone could have come upon it. Commonwealth v. Nutile, 31 Mass.App.Ct. 614, 619 (1991) (no expectation of privacy with respect to items thrown from car during justifiable police chase). Contrast Commonwealth v. Straw, 422 Mass. 756, 759 (1996) (no abandonment *496 where property is placed in a locked container and thrown into the family home’s fenced-in curtilage). The officer’s “act in picking up the glassine bags did not constitute a search of the defendant within the meaning of the Fourth Amendment to the Constitution of the United States. The defendant had voluntarily given up all control over the bags and could have no expectation of privacy with respect thereto.” Commonwealth v. Battle, 1 Mass.App.Ct. 579, 583 n. 7 (1973). The contraband, like the cash, is not “fruit of the poisonous tree.”
Oral Statements
For the same reasons, the statements made by Flores concerning the money and his responses to the booking questions about his employment need not be suppressed as “fruits of the poisonous tree.” Both statements were made after there was probable cause to arrest Flores for assault and battery on a police officer and for unlawful possession of controlled substances, and they are not sufficiently connected to the primary illegality, if any, to require suppression. “An unlawful arrest does not compel suppression of statements not related to the unlawful arrest.” Commonwealth v. Shipps, 399 Mass. 820, 829 (1987). Flores again relies upon the rejected “but for” analysis, arguing that “but for” the unconstitutional arrest for trespass, he would not have spoken to the police on April 3, 1995. That is not the test. “There is no simplistic ‘but for’ analysis that applies in this area of the law.” Commonwealth v. Saia, 372 Mass. 53, 58 (1977).
The trespass arrest was not deliberately aimed at encouraging the defendant to incriminate himself. There is no causal relationship between the arrest for trespass and the subsequent statements after independent probable cause to arrest arose by virtue of the intervening voluntary acts by the defendant. “In these circumstances, outlawing [the defendant’s] statements] would hardly have served an important demonstrative purpose of deterring the police from future malfeasance.” Commonwealth v. Shipps, 399 Mass. at 830, quoting Commonwealth v. Sylvia, 380 Mass. 180, 184 (1980).
The defendant alternatively argues that his statements must be suppressed because no Miranda warning was given. Miranda applies only to statements elicited as a result of custodial interrogations and not to “volunteered statements of any kind.” Miranda v. Arizona, 384 U.S. 436, 478 (1966). A “custodial interrogation” requires questioning, or its functional equivalent, “initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.” Id. at 444.
When Flores uttered the statements at issue he was in custody. Nevertheless, the statement by the defendant to the effect that the money removed from his pocket belonged to him need not be suppressed because it was a spontaneous utterance volunteered by the defendant without any prodding by any of the officers. See, e.g., Commonwealth v. Chipman, 418 Mass. 262, 272-73 (1994). When Flores protested, he “spoke before he was spoken to.” Commonwealth v. Smith, 35 Mass.App.Ct. 655, 657 (1993).
The fact that Donahue had with him the two plastic bags he had found in the dirt does not turn their encounter into the functional equivalent of interrogation. A reasonable person would not have perceived either the holding of the bags or the seizure of the cash to have beeen an interrogation. Cf. Arizona v. Mauro, 481 U.S. 520, 529 (1987) (“Officers do not interrogate a suspect simply by hoping that he will incriminate himself’).
Flores’ statement to the booking officer concerning his employment stands in a different light, as the Commonwealth concedes,[5] and it will be suppressed. Flores’ employment status clearly was potentially incriminating since both apparently controlled substances and a large amount of cash were found. The police did not give warnings to Flores before asking him about his employment status. “[W]here an arrestee’s employment may prove incriminatory, the police must give Miranda warnings before asking questions about employment.” Commonwealth v. Woods, 419 Mass. 366, 372 (1995). See also Commonwealth v. Guerrero, 32 Mass.App.Ct. 263, 268 (1992).
ORDER
For the reasons set forth above, the Court hereby ORDERS that the defendant’s Motion to Suppress be DENIED and that the defendant’s Motion to Suppress Statements of Defendant be ALLOWED with respect to the statements made at the Cambridge Police Department during booking and DENIED with respect to the statements made at the scene of the defendant’s arrest.

The arresting officers were familiar with Cambridge Housing Authority’s procedures and had reasonable grounds to believe that Flores had notice that he was not allowed to be at Jefferson Park. The Cambridge Housing Authority maintains in its files copies of the “no trespass” letters it issues. Those files contain a copy of a “no trespass” letter to Sabino Flores, Jr. dated August 7, 1992, notifying him that his presence at any time at Jefferson Park would be considered trespass. The letter is addressed to Flores at 2568 Mass. Ave. in Cambridge. This is the same address he provided to the Cambridge Police Department during booking. I do not find credible the statement in Flores’ affidavit that he had not received the notice from Cambridge Housing Authority, but resolution of these motions do not turn on whether Flores did or did not receive the notice.

The indictments do not charge the defendant with trespass.

G.L.c. 266, §120 states that “whoever, without right enters or remains in or upon the . . . enclosed land ... of another, after having been forbidden so to do by the person who has lawful control of said premises” has violated the criminal trespassing statute and that a “person who is found committing ... [a] trespass may be arrested by a . . . police officer . . .” Defendant relies upon two Cambridge District Court decisions in support of his contention that the Cambridge Housing Authority list is unconstitutional and may not be the basis for a charge of violation of c. 266, §120. In Commonwealth v. Abraha, Cambridge District Court No. 95-CR2307 (September 27, 1995), the court simply endorsed as “allowed” a motion to suppress based on several grounds; because no reasons were given, it is not clear that the court *497 accepted the defendant’s argument that the list is unconstitutional. In Commonwealth v. Burke, Cambridge District Court No. 95-1806 (July31, 1995), the court allowed a motion to dismiss the complaint on the grounds that the “defendant was an invitee of a tenant of the property and only the tenant can terminate the tenant’s status.” See also Commonwealth v. Richardson, 313 Mass. 632, 638 (1943) (G.L.c. 266, §120, construed not to apply to the activities of ministers who go from house to house distributing or selling religious literature). A tenant’s “right to admit any visitor,” Commonwealth v. Hood, 389 Mass. 581, 589 (1983), presumably may be waived by agreement between the tenant and the landlord. There is no evidence as to the terms of the lease executed between the Cambridge Housing Authority and the tenant whom Flores was accompanying.

The defendant’s reliance upon Commonwealth v. Loughlin, 385 Mass. 60 (1982), is misplaced. In that case, officers, after they had completed their justifiable investigation, illegally ordered the defendants out of a car, illegally pat-frisked them and, as a result of what was found in the illegalpat-frisk, sought permission to search the car. On those facts, the Court found that the record “did not show sufficient attenuation of the illegal search ... and the illegal seizure ... to warrant a finding that [the driver’s] consent was an act of free will, unaffected by the taint of the illegality.” Id. at 63.

During the hearing on the motions to suppress, the Commonwealth represented that it does not intend to introduce, during its case-in-chief, the defendant’s statement that he was unemployed.