160 N.J. Super. 227 (1978)
389 A.2d 507
STATE OF NEW JERSEY, PLAINTIFF,
v.
LARRY BROWN, RODNEY MOULTON, WILLIAM ODEL WALKER, DEFENDANTS.
Superior Court of New Jersey, Law Division (Criminal).
Decided May 26, 1978.
*228 Mr. Thomas Kaczka, Assistant Prosecutor, for the State (Mr. James T. O'Halloran, Prosecutor of Hudson County, attorney).
Mr. Thomas Kilcoyne, Assistant Deputy Public Defender, for defendant Larry Brown (Mr. Stanley C. Van Ness, Public Defender, attorney).
*229 MAURICE A. WALSH, JR., J.S.C.
The defendants have filed a motion to suppress giving rise to a novel question in this jurisdiction. The main issue is whether the principles enunciated in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), permit a limited search of an automobile prior to an arrest when the area searched is beyond the immediate reach of defendants.
Because the evidence in question was seized without a warrant the burden of proof lies with the State. State v. Contursi, 44 N.J. 422 (1965); State v. Whittington, 142 N.J. Super. 45 (App. Div. 1976). To support their respective positions both parties, per R. 3:5-7, have submitted statements of facts and the law.
The State alleges that at about 4 A.M. on December 1, 1977 Trooper Al Drummond, a New Jersey State Trooper, observed an automobile on the New Jersey Turnpike containing defendants, swerving between the marked lanes and tailgating another vehicle. Responding to what he apparently believed was reckless driving, Trooper Drummond turned on his overhead light to pull defendants' vehicle to the side of the road. At this time he noticed that the rear passenger, later identified as Larry Brown, leaned down as though he were attempting to conceal something beneath the rear seat. As the driver of the vehicle produced his registration and license, Trooper Drummond again saw the defendant allegedly reach beneath the rear seat. This prompted the officer to believe that defendants might have a weapon, at which point he ordered defendants to step out of the vehicle so that they could be frisked. In addition, Trooper Drummond checked the area beneath the rear seat of the automobile, whereupon he found a .38-caliber revolver. Defendants were then arrested for the unlawful possession and carrying of a revolver without a permit, in violation of N.J.S.A. 2A:151-41.
Defendant Larry Brown states that he was merely dozing when the vehicle was stopped by Trooper Drummond. He *230 denies making any furtive movement with his hands, nor does he know the reason why he and the other defendants were stopped. Furthermore, he alleges that he does not know where the gun was found. Brown, through counsel, concedes that if the court should find that the search was performed under the circumstances as outlined by the State, then the search was valid.
When material facts are in dispute, as they are here, R. 3:5-7(c) provides that testimony shall be taken in open court. Accordingly, the court heard the testimony of Trooper Drummond and finds that his live testimony coincides in the main with the State's statement of facts filed herein. The court also finds Trooper Drummond's testimony to be credible. Although given an opportunity to do so, the three defendants did not produce any witnesses or evidence at the hearing. State v. Gonzalez, 75 N.J. 181 (1977).
The main issue is whether the officer had the authority to conduct the limited search of the area beneath the rear seat. The State contends that Trooper Drummond's action was part of a protective search. However, since defendants were out of the vehicle when the limited intrusion occurred and thus were not within reach of the area searched, there is some question as to whether the police went beyond their prescribed authority in stop and frisk situations. The leading case on stop and frisk searches is Terry v. Ohio, supra. There the United States Supreme Court stated that protective searches  stop and frisk searches  required a two-fold inquiry. First, the court said, it must be determined whether the initiation of the investigation by the police is permissible, and second, the scope of the search must be justified by the circumstances.
As for the first inquiry, the test is simply whether a reasonably prudent man in the policeman's position would be warranted in the belief that the safety of the police or that of other persons was in danger. Terry v. Ohio, supra, 392 U.S. at 27, 88 S.Ct. 1868. Based on the facts *231 as alleged in the State's statement of facts and the testimony of Trooper Drummond, this court finds that there was sufficient reasonable belief that defendants may have been armed, thus warranting the stop and frisk of defendants. Further, in view of the circumstances, this court finds that the officer was justified in requiring them to step out of the vehicle. In a recent United States Supreme Court decision, the court, addressing itself to just this type of situation, stated that "even where there is no reason to suspect foul play," ordering the driver out of the vehicle is so de minimis an intrusion as to amount to a "mere inconvenience which cannot prevail when balanced against the legitimate concern for the officer's safety." Pennsylvania v. Mimms, 434 U.S. 106, 111, 98 S.Ct. 330, 333, 54 L.Ed.2d 331 (1977). In light of the trooper's testimony that he saw defendant Brown make certain furtive movements, and the fact that there were three passengers in defendant's vehicle which was stopped at 4 a.m., the Mimms decision clearly is applicable in the instant situation.
The second, and in this case the more important inquiry, is whether the scope of the search was justified by the circumstances. The rule set down in Terry, supra, is that a stop and frisk search must be "strictly tied to and justified by" the circumstances which rendered its initiation permissible. Terry v. Ohio, supra 392 U.S. at 19, 88 S.Ct. at 1878. "The sole justification of the search in the present situation is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." Id. at 29, 88 S.Ct. at 1884. Such protective searches are restricted to the area "from within which [the suspect] might gain possession of a weapon." Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969).
In the case at bar both the State and defendants agree that when the officer searched beneath the seat of the *232 vehicle, defendants were standing beyond the reach of the area searched. Therefore, on its face, the limited intrusion can be argued to have gone against the grain of the limitation established in Chimel, supra. However, to support its position the State cites State v. Kennedy, 134 N.J. Super. 454 (App. Div. 1975). The facts in that case were similar to those in the instant case, but the circumstances of the protective search were far different. After stopping a vehicle for speeding, the police officer observed that the driver opened and closed the glove compartment in a fast, suspicious manner. Further, he noticed a bulge protruding from underneath the floor mat. Suspicious that the two passengers may have had a gun, the officer walked to the passenger's side of the vehicle and asked the passenger to open the glove compartment. When opened, the officer saw what he suspected to be a box of bullets, whereupon both passengers were ordered out of the vehicle and questioned about the location of the gun. They responded that the gun was underneath the floor mat, at which point the two men were arrested and only after the arrest did the police secure the gun.
The instant case can be distinguished from the situation in State v. Kennedy in two important respects. First, when the policeman requested the passenger to open the glove compartment the passenger was still in the vehicle and hence was obviously within reach of the weapon had it been located in the glove compartment. Second, when the police retrieved the gun underneath the floor mat, defendants already had been placed under arrest. In the case at bar, defendants were not within reach of the area searched, nor were they arrested prior to the time of the protective search.
As with all searches, the test in a stop and frisk search narrows down to whether the police conduct was reasonable under the Fourth Amendment. While there is "no ready test for determining reasonableness other than by balancing the need to search against the invasion which the search entails," Camara v. Municipal Court of San Francisco, *233 387 U.S. 523, 536-7, 87 S.Ct. 1727, 1735, 18 L.Ed.2d 930 (1967); this court, when determining the need to search for protective purposes, is mindful of the increasing number of police officers killed and assaulted. "Twenty-four police officers were killed by guns in this State during the ten-year period ending in 1976. During 1976 there were * * * five New Jersey police officers killed and 3,903 assaulted in the line of duty." State in the Interest of H.B., 75 N.J. 243, 246 (1977).
Although, as far as this court is aware, no New Jersey court has addressed itself to the issue presented within this particular factual framework, other jurisdictions have supported limited searches of automobiles in situations similar to the one at bar.
In Commonwealth v. Almeida, 366 N.E.2d 756, 760 (Mass. Sup. Ct. Jud. 1977), the court was faced with the following set of facts. A cruiser patrolling a high-crime area stopped alongside an automobile. The car was parked with the driver in the driver's seat, and the police also observed that the key was in the ignition. Nevertheless, because the area was known for its high rate of crime, the officer decided to investigate and asked the driver if he had a registration for the vehicle and a driver's license. The driver then lifted the cover to the console located between the driver and passenger seats to retrieve his wallet in what the policeman characterized to be a suspicious manner  as if the driver wanted to conceal something. When the driver could not produce a registration certificate the officer, some 15 seconds later, fearing that there might be a gun in the vehicle, ordered the driver to step outside. The policeman then opened the door to the vehicle and saw protruding from underneath the front seat what he recognized to be a gun holster. With a sweeping motion underneath the seat, the policeman pulled out a holster with some ammunition. Thereafter he opened the console and found a fully loaded automatic pistol.
*234 In Almeida the court found the search to be strictly tied to and justified by the officer's reasonable belief that a gun may have been nearby, endangering his safety. While the gun admittedly was outside the reach of defendant once he was outside of the vehicle, because "he was not under arrest at the time of the `pat-down' search of his person * * * there was no assurance that he would not be returning promptly to his seat behind the wheel of the automobile." 366 N.E.2d at 760.
Recognizing that the touchstone of the Fourth Amendment is reasonableness, this court finds that under the facts presented by the State, facts similar to those present in Commonwealth v. Almeida, supra, the trooper's action in searching the area limited to beneath the back seat of the vehicle was reasonable. Among the considerations leading to this conclusion is the fact that the incident occurred at 4 a.m., a time in which there is very little traffic, thus lending to the isolation of the officer. Further, there were three men in the car in question, one of whom allegedly made certain furtive gestures. In addition, since no contraband was found on defendants' persons during the pat-down, defendants would have returned to their vehicle and, had there been a weapon, the weapon would then have been within the reach of the defendants. Finally, the limited search of the vehicle was "strictly tied to and justified by" the officer's suspicion that there may have been a weapon present endangering his safety.
However close the facts in this case may be, "in applying hindsight to the officer's actions, we think it crucial to remember that as shown by many tragic climaxes to threshold police inquiries, the answer might be a bullet." Commonwealth v. Almeida, supra at 759; Terry v. Ohio, supra 392 U.S. at 33, 88 S.Ct. 1868. Moreover, whenever interpreting the law  whether it be case law or statute  over-technical interpretations defying the law's intent should always be avoided. The instant case clearly falls within the intent and permissible reaches of Terry v. Ohio, supra. *235 Therefore, based on the facts presented by the State, this court finds that on this motion to suppress the State has carried its burden by clear and convincing evidence, and accordingly the motion is denied.