**STATE of Maine**

v.

**James P. DARLING.**

Supreme Judicial Court of Maine.

Nov. 8, 1978.

Thomas E. Delahanty, II, Dist. Atty., Linda Sibery Crawford, Asst. Dist. Atty. (orally), Farmington, for plaintiff.

Paul H. Mills (orally), Farmington, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, GODFREY and NICHOLS, JJ.

GODFREY, Justice.

Defendant James P. Darling was indicted on two counts of criminal mischief with a firearm. 17–A M.R.S.A. § 806 (Supp.1978). He filed a motion to suppress all items taken from his automobile on the date of the arrest. Testimony at the suppression hearing revealed the following facts:

At about 9:00 p. m. October 3, 1977, a game warden stationed on Mosher Hill outside Farmington heard shots coming from the direction of Route 43, about one mile away. Suspecting illegal night hunting, the warden radioed for assistance and soon met with Farmington police officers Jones and Adams. After a brief discussion with the warden during which the officers learned of the shots, the officers proceeded down Route 43 and observed the defendant's vehicle with its headlights on, parked at the side of the road near a speed-limit sign. The officers pulled in behind the parked automobile and activated their blue lights. Officer Jones approached the vehicle and asked the defendant, the sole occupant, for his driver's license and registration. While the defendant was looking in the glove compartment, Jones shone his flashlight into the rear seat area and observed a pistol holster on the floor protruding from under the front seat.

Jones asked the defendant to get out of the automobile. As the defendant stepped out, Jones heard a metallic sound, looked down, and saw three expended pistol casings on the ground by the door. Jones frisked the defendant and took him to the rear of his automobile where both officers

observed more expended pistol casings. Officer Adams informed Officer Jones that there were recent bullet strikings on the nearby speed-limit sign.

Jones then entered the defendant's vehicle and observed a nylon bag, with an open drawstring, containing a box of ammunition. Jones removed the holster, looked under the front seat, and discovered and removed a .38 caliber revolver. At that point Jones placed the defendant under arrest. Defendant and his vehicle were later taken to the sheriff's office, where Officer Jones removed a rifle from the trunk of the vehicle.

On those facts the trial court granted the motion to suppress. Pursuant to 15 M.R.S.A. § 2115-A (Supp.1965–1978), the State appeals from this suppression ruling. Applying the principles announced in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), we sustain the State's appeal.

■ Officer Jones was reasonably justified in making his initial intrusion on the defendant. The officer had specific and "articulable" facts giving rise to a reasonable suspicion that defendant was engaged in criminal activity: the warden's report of the earlier sound of shots coming from the area where defendant was found and the discovery of defendant's car parked with its headlights on by the side of a country road. In such circumstances, the police officers had reasonable grounds to suspect that defendant might have been engaged in illegal night hunting, 12 M.R.S.A. § 3051 (Supp. 1978–79); *State v. Hillock*, Me., 384 A.2d 437 (1978), and their initial intrusion was not constitutionally invalid. *Terry v. Ohio, supra.*

■ Officer Jones's request or order to defendant to leave the vehicle and the ensuing frisk did not violate the defendant's Fourth Amendment rights. The facts available to the officer would have warranted a person of reasonable caution in *believing* that considerations of personal safety made the action appropriate. *Terry v. Ohio, supra,* 392 U.S. at 27, 88 S.Ct. at 1883. Shots had been fired in the vicinity. Officer Jones had observed a pistol holster protruding from under the seat of the defendant's automobile. On such facts, "a reasonably prudent man in the circumstances would be warranted in the belief that his safety . . . was in danger." *Terry v. Ohio, supra,* at 27, 88 S.Ct. at 1883.[1]

■ The second inquiry under *Terry* is whether the scope of the search was reasonable in the circumstances. Having seen the protruding pistol holster and then the pistol casings, the officers had reasonable grounds to suspect that a handgun was present in the automobile. The defendant had not been placed under arrest at the time Officer Jones searched his automobile, and there was thus no assurance that defendant would not return to the vehicle where a handgun might have been concealed within easy reach. It would be irrational, in the circumstances, to conclude that the Fourth Amendment permitted Officer Jones to frisk the defendant but prohibited him from looking for a weapon under the car seat. In those circumstances, a brief search of the interior of the automobile was entirely consistent with the principles announced in *Terry.* In a similar case, the Supreme Judicial Court of Massachusetts has said:

> "We also said that a *Terry* type of search may extend into the interior of an automobile so long as it is limited in scope to a protective end. Thus the search must be confined to the area from which the suspect might gain possession of a weapon.
>
> As in the *Silva* case [*Commonwealth v. Silva*, 366 Mass. 402, 318 N.E.2d 895], the defendant was not in the automobile at the time it was searched. Nevertheless, like the defendant in *Silva*, he was not under arrest at the time of the "patdown" search of his person, and there was no assurance that he would not be returning promptly to his seat behind the wheel of the automobile. The police offi-

---

1. Holding, as we do, that the initial intrusion and the ensuing frisk were justifiable under *Terry*, we have no occasion to consider whether *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) has any applicability to this case.

cer opened the door of the vehicle, did not enter the vehicle but leaned into the interior, and saw what he recognized as a gun holster protruding from beneath the front seat. He then swept his hand underneath the seat to bring into full view the holster and a full clip of ammunition. The search of the console, which was located on the front seat, and the discovery of the gun, followed immediately.

We conclude that the scope of the intrusion of the searching officer into the automobile was justifiable in the circumstances shown, and well within the *Terry* concept." *Commonwealth v. Almeida,* Mass., 366 N.E.2d 756, 760 (1977). *Accord, State v. Brown,* 160 N.J.Super. 227, 389 A.2d 507 (1978); *Brown v. State,* 358 So.2d 596 (Fla.App.1978); *State v. Malbeck,* 15 Wash.App. 871, 552 P.2d 1092 (1976).

*Terry* permits only a protective search for weapons, not a general search for evidence. As in the frisk of a person, the officer conducting a protective search of an automobile must be able to show "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio, supra,* 392 U.S. at 21, 88 S.Ct. at 1880. Such a search must be strictly limited to areas within an automobile in which a weapon can be concealed yet accessible. The search conducted by Officer Jones satisfied those requirements.

We do not pass on the constitutionality of the search and seizure of the rifle because the presiding justice terminated the suppression hearing before the facts relevant to that question were fully developed.

The entry is:

Appeal sustained.

Order of suppression vacated.

Remanded for further proceedings consistent with this opinion.

ARCHIBALD and DELAHANTY, JJ., did not sit.