PEOPLE v LONG

Docket No. 64416. Argued January 6, 1981 (Calendar No. 5).—Decided
    June 14, 1982. Certiorari granted by the Supreme Court of the
    United States on October 12, 1982.

    David K. Long was convicted by a jury in Barry Circuit Court,
        Hudson E. Deming, J., of possession of marijuana. The trial
        court denied the defendant's motion to suppress, as unconstitu-
        tionally obtained, evidence seized from the interior and trunk
        of defendant's car by two deputies of the Barry County Sheriff
        who had stopped the defendant's car for speeding. The prose-
        cutor contended that the deputies had made a "protective"
        search of the interior of the automobile after it came to a stop
        because the defendant appeared to be "under the influence of
        something" and the deputies saw a folded Browning knife on
        the floor of the driver's side of the car. One deputy picked up
        the knife, while the other conducted a pat-down search of the
        defendant. Then the first deputy searched the defendant's
        vehicle, and found a leather bag containing a plastic bag of
        marijuana under the armrest of the front seat. The deputies
        decided to arrest the defendant for possession of marijuana and
        to impound the automobile. They then opened the trunk, and
        inside they found two paper bags, containing approximately 75
        pounds of marijuana. The Court of Appeals, Cynar, P.J., and
        D. F. Walsh and Bebeau, JJ., affirmed, holding that the search
        of the interior of the automobile without a warrant was a

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 5] 68 Am Jur 2d, Searches and Seizures §§ 33, 58, 84, 103.
[2, 6-9] 68 Am Jur 2d, Searches and Seizures §§ 23, 39.
[3] 68 Am Jur 2d, Searches and Seizures §§ 2, 35.
[4] 29 Am Jur 2d, Evidence § 415.
    68 Am Jur 2d, Searches and Seizures §§ 16, 34, 57, 85, 96, 106.
    Lawfulness of nonconsensual search and seizure without warrant,
        prior to arrest. 89 ALR2d 715.
[6-8] 68 Am Jur 2d, Searches and Seizures §§ 16, 85, 96.
[7] 68 Am Jur 2d, Searches and Seizures § 40.
[8] 68 Am Jur 2d, Searches and Seizures § 103.
[9] 68 Am Jur 2d, Searches and Seizures § 88.
[10] 68 Am Jur 2d, Searches and Seizures §§ 34, 57, 106.
    Lawfulness of "inventory search" of motor vehicle impounded by
        police. 48 ALR3d 537.

reasonable "protective" search and that the search of the trunk was permissible to make an inventory of the contents of the impounded automobile (Docket No. 78-3810). The defendant appeals.

In an opinion by Justice Kavanagh, joined by Justices Williams, Levin, Fitzgerald, and Ryan, the Supreme Court *held:*

The search of the defendant's car without a warrant was proscribed by the Fourth Amendment and the Michigan Constitution, and the evidence obtained pursuant to the unconstitutional search should have been suppressed.

1. There is a narrowly drawn authority to permit a reasonable search for weapons, without a warrant, for the protection of a police officer, where the police officer has reason to believe that he is dealing with a person who is armed and dangerous, regardless of whether he has probable cause to arrest. Only a limited pat-down search of a person suspected of criminal activity is authorized, rather than the search of the area around the person. Without deciding whether the rationale of a protective search can ever be extended to the area within the suspect's reach, the Supreme Court concluded that under the facts of this case there is no justification for such an extension of the case law.

2. When the search of the interior of the automobile was conducted, the defendant was standing at the rear of the vehicle under the control of one deputy and the other deputy was between the open door of the vehicle and the defendant. The deputies had conducted a pat-down search of the defendant and had found no weapons; any weapons which might have been hidden in the car, after the deputies picked up the knife, would have been out of the reach of the defendant, and thus did not pose a danger to the deputies.

3. A search and seizure without a warrant is unreasonable per se and violates the Fourth Amendment of the United States Constitution and the state constitution unless it is shown by the prosecution to be within one of the exceptions to the rule. The protection of police officers and other persons nearby cannot justify the search of the automobile in this case, and the prosecutor does not contend that the search can be justified by other exceptions to the constitutional requirement of a warrant. Therefore, the search of the interior of the vehicle was proscribed by the Fourth Amendment and the Michigan Constitution, and the evidence obtained by the search should have been suppressed.

4. The people seek to justify the search of the trunk without a warrant either as a search to inventory impounded property

or as a search incident to the arrest of the defendant. The search of the trunk occurred after the decisions by the deputies to arrest the defendant for possession of marijuana found under the armrest of the seat and to impound the automobile. The defendant's arrest was based on evidence obtained from the interior of the automobile by unlawful action of the deputies, and the evidence of marijuana found in the trunk was the "fruit" of that illegality which should have been suppressed.

The defendant's conviction is reversed.

Chief Justice Coleman, dissenting, rejected as unpersuasive the distinction between a limited pat-down search of the person and a search of the area around the person where the police officer has reason to believe that the person is armed and dangerous.

1. The purpose of a limited protective search for weapons is not to discover evidence of crime, but to allow the police officer to pursue his investigation without fear of violence. Other courts have upheld protective searches of the interior of a vehicle while the occupants were detained outside it because they were not under arrest and could have returned to the vehicle when the encounter was ended. In this case, the defendant was entering the vehicle to retrieve the registration when the deputy sheriff observed a knife on the floor of the vehicle. Accordingly, a claim that a protective search is permitted cannot be summarily rejected on the ground that there was no danger. If the possibility that a suspect will re-enter his vehicle after an encounter with the police ends is sufficient to support a protective search, the fact that he is attempting to enter the vehicle while the confrontation continues is also sufficient.

2. In this case, the sheriff's deputies were confronting a person suspected of speeding, whose car ended up in a ditch. The defendant met the deputies at the rear of his car. He failed to answer their questions, began walking back toward the door of his car while he appeared to be under the influence of something, and acted scared. These observations and the knife on the floor of the car gave the officers reason to believe they were dealing with an armed and dangerous person. A reasonably prudent officer would be justified in believing that he was in danger; therefore, the officer was permitted to conduct a protective search.

3. Considering all the circumstances, including that one weapon had already been found and that the officer saw a leather pouch large enough to hold another weapon under the driver's armrest, the officer could have reasonably concluded that safety required further investigation. Lifting the armrest

was an action reasonably designed to uncover a hidden weapon, because it would permit the officer to investigate whether the contents of the pouch could be inferred from its outward appearance, or by patting down or frisking the pouch. In contrast to the gravity of the danger confronting the officers, raising the armrest was a minimal intrusion into the defendant's expectation of privacy in the automobile when compared with the intrusions which have been allowed in other cases.

4. Raising the armrest in a protective search of the interior of the defendant's automobile is not an unreasonable search prohibited by the Fourth Amendment or by the state constitution. Then the contents of the open pouch, a plastic bag containing marijuana, were in the plain view of the officer, who properly seized the contraband and arrested the defendant. Review of the other issues raised by the defendant discloses no error requiring reversal.

Justice Moody, concurring in the result, agreed generally with the analysis of Chief Justice Coleman in her dissent. However, he would hold that admission of the marijuana found in the defendant's trunk into evidence was error requiring reversal.

1. The defendant, at the request of the police, was in the process of entering his automobile to obtain his registration and insurance certificates when an officer saw a knife in plain view. This discovery reasonably led the officers to search the defendant. It was reasonably appropriate and consistent with the principles announced by the Supreme Court of the United States for the officers thereafter to conduct a brief search of the interior of the automobile for weapons, limited to areas in which a weapon could be concealed, yet be accessible. The subsequent discovery of the marijuana, visible under the driver's armrest, provided probable cause for the arrest and was admissible as evidence.

2. The search of the trunk of the automobile and the seizure of the marijuana in it without a warrant was unreasonable and violated the Fourth Amendment to the United States Constitution. The people sought to justify the seizure as having been made pursuant to a valid inventory search following the defendant's arrest and the decision of the police to impound the automobile. However, unlike the situation in the case in which the Supreme Court of the United States upheld a valid inventory search, in this case the defendant was present at the time of the asserted impoundment, he was not asked if he wished an inventory of the vehicle's contents to be conducted, and the site of the impound lot was secure. In addition, the police had no

standard departmental policy pertaining to inventory searches. The personal "standard procedure" of the officer who conducted the inventory does not meet the requirements of reasonableness suggested by the Supreme Court of the United States. Without a departmental policy, too much discretion is placed in the hands of the officer, resulting in the possibility that his decision to conduct a search may be arbitrary.

94 Mich App 338; 288 NW2d 629 (1979) reversed.

### OPINION OF THE COURT

1. SEARCHES AND SEIZURES — WITHOUT A WARRANT — PROTECTIVE SEARCHES — WEAPONS.

There is a narrowly drawn authority to permit a reasonable search for weapons, without a warrant, for the protection of a police officer, where the police officer has reason to believe that he is dealing with a person who is armed and dangerous, regardless of whether there is probable cause to arrest; only a limited pat-down search of a person suspected of criminal activity is authorized, rather than the search of the area around the person (US Const, Am IV; Const 1963, art 1, § 11).

2. SEARCHES AND SEIZURES — AUTOMOBILES — WITHOUT A WARRANT — PROTECTIVE SEARCHES — WEAPONS.

There is no justification to permit a protective search of the interior of an automobile for weapons where the defendant, who had been stopped by a sheriff's patrol for speeding, was standing at the rear of the automobile under the control of one deputy sheriff and another deputy was between the open door of the automobile and the defendant, the deputies had conducted a pat-down search of the defendant and had found no weapons, and the deputies had seized a knife which they had seen on the floor of the automobile; any weapons which might have been hidden in the car would have been out of the reach of the defendant, and thus did not pose a danger to the deputies (US Const, Am IV; Const 1963, art 1, § 11).

3. SEARCHES AND SEIZURES — WITHOUT A WARRANT — BURDEN OF PROOF.

A search and seizure without a warrant is unreasonable per se and violates the Fourth Amendment of the United States Constitution and the state constitution unless it is shown by the prosecution to be within one of the exceptions to the rule (US Const, Am IV; Const 1963, art 1, § 11).

4. SEARCHES AND SEIZURES — AUTOMOBILES — WITHOUT A WARRANT.

A search of the trunk of a defendant's automobile, and seizure of

75 pounds of marijuana from it, by police officers acting without a warrant cannot be justified either as a search incident to the arrest of the defendant for possession of other marijuana which was found in the interior of the automobile, or as a search to inventory impounded property where the search of the trunk occurred after the decisions of the officers to arrest the defendant and impound the automobile, and the defendant's arrest was based on evidence obtained by unlawful action of the deputies in searching the interior of the automobile; the evidence of marijuana found in the trunk was the "fruit" of that illegality and should have been suppressed (US Const, Am IV; Const 1963, art 1, § 11).

DISSENTING OPINION BY COLEMAN, C.J.

5. SEARCHES AND SEIZURES — WITHOUT A WARRANT — PROTECTIVE SEARCHES — WEAPONS.

*The purpose of a limited protective search for weapons without a warrant is not to discover evidence of crime, but to allow a police officer to pursue his investigation without fear of violence; therefore, it is unpersuasive to distinguish between a limited pat-down search of a person and a search of the area around the person where the police officer has reason to believe that the person is armed and dangerous (US Const, Am IV; Const 1963, art 1, § 11).*

6. SEARCHES AND SEIZURES — AUTOMOBILES — WITHOUT A WARRANT — PROTECTIVE SEARCHES — WEAPONS.

*A claim that a protective search of the interior of a defendant's automobile for weapons is permitted cannot be summarily rejected on the ground that any weapon was out of the reach of the defendant and presented no danger where the defendant, who was stopped by a sheriff's patrol for speeding, was entering the vehicle to retrieve the registration when one of the deputies observed a knife on the floor of the driver's side of the car; the fact that the defendant was attempting to enter the vehicle while the confrontation with the deputies continued is sufficient to support a protective search without a warrant (US Const, Am IV; Const 1963, art 1, § 11).*

7. SEARCHES AND SEIZURES — AUTOMOBILES — WITHOUT A WARRANT — PROTECTIVE SEARCHES — WEAPONS.

*Two sheriff's deputies had reason to believe that they were in danger and, therefore, were permitted to conduct a protective search of the interior of the defendant's automobile for weapons where the defendant, who had been stopped by the deputies*

*for speeding, met the deputies at the rear of his car and failed to answer their questions, began walking back toward the door of his car while he appeared to be under the influence of something and acted scared, and the deputies saw a knife on the floor of the automobile and seized it (US Const, Am IV; Const 1963, art 1, § 11).*

8. SEARCHES AND SEIZURES — AUTOMOBILES — WITHOUT A WARRANT — PROTECTIVE SEARCHES — WEAPONS.

*Raising the armrest of an automobile in a protective search of the interior of an automobile is not an unreasonable search prohibited by the Fourth Amendment or by the state constitution where one weapon had been found in the automobile, which was stopped for speeding by a sheriff's patrol, and one deputy sheriff saw a leather pouch large enough to hold another weapon under the driver's armrest; lifting the armrest was a minimal intrusion into the defendant's expectation of privacy in the automobile which would permit the deputy to investigate whether the contents of the pouch could be inferred from its outward appearance, or by patting down or frisking the pouch (US Const, Am IV; Const 1963, art 1, § 11).*

9. SEARCHES AND SEIZURES — AUTOMOBILES — WITHOUT A WARRANT — PLAIN VIEW.

*Two deputies on a sheriff's patrol acting without a search warrant properly seized marijuana from a defendant's automobile, which had been stopped for speeding, where the deputies had seized a knife which they had seen on the floor of the automobile, conducted a limited protective search of the interior of the automobile, and raised the armrest to investigate an open leather pouch in plain view which contained a plastic bag of marijuana (US Const, Am IV; Const 1963, art 1, § 11).*

CONCURRING OPINION BY BLAIR MOODY, JR., J.

See headnotes 5-9.

10. SEARCHES AND SEIZURES — AUTOMOBILES — WITHOUT A WARRANT — INVENTORY SEARCHES.

*Seizure of marijuana without a warrant from the trunk of an automobile by the police at the scene of an arrest after deciding to impound the vehicle cannot be justified on the ground that the seizure was made pursuant to a valid inventory search where the occupant of the vehicle was present at the time of the asserted impoundment and was not asked whether he wished an inventory to be made, the impound lot at which the vehicle would be stored was secure, and no departmental policy*

*for conducting inventory searches for safeguarding impounded vehicles and their contents existed.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Judy H. Hughes,* Prosecuting Attorney, and *Leonard J. Malinowski,* Assistant Attorney General (Prosecuting Attorneys Appellate Service), for the people.

*Vlachos, Jerkins & Hurley* and *James H. Geary* for defendant.

KAVANAGH, J. The defendant, David Kerk Long, appeals his conviction of possession of marijuana. He contends that evidence of the marijuana found in the interior and trunk of the automobile he was driving should have been suppressed as the product of unconstitutional searches. We reverse.

Shortly after midnight on August 25, 1977 while Deputies Howell and Lewis of the Barry County Sheriff's Department were on routine road patrol, they observed a car traveling past them in the opposite direction at an excessive speed. They turned their vehicle around and pursued the speeding vehicle. They saw the vehicle make a left turn, proceed down a side road, then swerve. The vehicle came to a stop with the front of the car in a shallow ditch and the back of the car on the roadway.

As the deputies approached, the defendant, the only occupant of the car, got out of the car, leaving the driver's side door open, and met the deputies at the rear of the car. Deputy Howell asked the defendant to produce his driver's license. The defendant made no response. The deputy repeated his request, and the defendant produced his license. When asked for his vehicle registration and proof of insurance, the defendant again made no

response. When the request was repeated, the defendant began walking toward the open door. At this juncture, Deputy Howell had formed the opinion that the defendant "appeared to be under the influence of something".

The deputies followed the defendant. As they approached the open door, the deputies saw a closed folding Browning knife on the floorboard of the driver's side.[1] The defendant was told to halt and put his hands on the roof of the car. He did. One deputy picked up the knife while the other deputy conducted a pat-down search of the defendant, which produced no weapons.

Deputy Howell then shined his flashlight into the front seat of defendant's car to search for other weapons and saw "something leather" under the armrest. He knelt in the vehicle, lifted the armrest and observed an open leather pouch containing a small plastic bag of what appeared to be marijuana. According to the testimony of the deputies at trial, Mr. Long was standing by the rear of the car under the control of Deputy Lewis during Deputy Howell's search.

Deputy Howell removed the pouch and showed it to Deputy Lewis. The defendant was arrested for possession of marijuana. The interior of the car was searched for additional contraband, and the glove compartment was searched for the registration certificate. Neither was found.

The deputies decided to impound the car. Deputy Howell asked the defendant if he had a trunk key. The defendant stated that he had no key. The deputy, noticing that the trunk lock had been punched out, used his pocket knife and reached in

---

[1] Browning is a brand of knife. This knife had a four-inch blade. The defendant was not charged with carrying a concealed weapon in violation of MCL 750.227; MSA 28.424.

and unlatched the latch. Deputy Howell testified as to why he opened the trunk as follows:

"Number one, because I already found marijuana, suspected marijuana, in the interior of the car, there may have been more in the trunk. Secondly, I check them for valuables. I do."

Upon opening the trunk the deputy found two paper bags, which were split open, containing approximately 75 pounds of marijuana.

The defendant was handcuffed, placed in the police car and taken to the sheriff's department along with the towed car.

At the preliminary examination and at trial the defendant moved to suppress evidence of the marijuana obtained through the searches of the interior and trunk of the car. These motions were denied and the defendant was subsequently convicted of possession of marijuana.

On appeal, the Court of Appeals affirmed the defendant's conviction. 94 Mich App 338, 350; 288 NW2d 629 (1979). That Court held that "Deputy Howell's precautionary lifting of the front seat armrest prior to allowing defendant to re-enter his automobile was constitutionally valid as a protective search under the *Terry* doctrine."[2] 94 Mich App 344. The Court of Appeals found "no reversible error in the trial judge's determination that the deputies' inspection of the trunk was made pursuant to a proper inventory of the type approved by *Opperman*[3] and its progeny". 94 Mich App 350.

The first issue on appeal is whether Officer

[2] *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968).

[3] *South Dakota v Opperman,* 428 US 364; 96 S Ct 3092; 49 L Ed 2d 1000 (1976).

Howell's warrantless search of the interior of the vehicle, while the defendant was standing near the rear of the car under the control of another officer, violated the constitutional proscription against unreasonable searches and seizures.[4] We hold that the search was unconstitutional and reverse. The Court of Appeals erroneously applied the principles of *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), to the search of the interior of the vehicle in this case.

In *Terry,* the United States Supreme Court authorized a limited warrantless protective search of the person during an investigatory stop. Prior to the stop, the police officer had observed two men involved in suspicious behavior for 10 to 12 minutes. The officer suspected the two men of "casing a job, a stick-up" and considered it his duty to investigate further. 392 US 6.

The Court held "that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime". *Id.,* p 27. The test set forth by the United States Supreme Court to justify the warrantless protective search "is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger". *Id.*

The limited authority to search was emphasized by the Court when it said "[t]he sole justification of the search * * * is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other

---

[4] US Const, Am IV; Const 1963, art 1, § 11.

hidden instruments for the assault of the police officer". *Id.,* p 29.

The officer's entry into the vehicle cannot be justified under the principles set forth in *Terry. Terry* authorized only a limited pat-down search of a *person* suspected of criminal activity. That case did not authorize the search of an area.[5]

At the time the search was conducted, the defendant was standing near the rear of the vehicle under the control of Deputy Lewis. Deputy Howell was positioned between the open door of the vehicle and the defendant. The deputies had conducted a pat-down search of the defendant after seeing the knife in the car and had found no weapons.[6] Any weapon which might have been hidden in the car would have been out of the reach of the defendant and thus not a danger to the deputies.[7] Therefore, the sole justification of the *Terry* search, protection of the police officers and others nearby, cannot justify the search in this case.

The state does not contend that the search can be justified by reference to other exceptions to the warrant requirement.[8] We hold, therefore, that the

---

[5] *Chimel v California,* 395 US 752; 89 S Ct 2034; 23 L Ed 2d 685 (1969), and *New York v Belton,* 453 US 454; 101 S Ct 2860; 69 L Ed 2d 768 (1981), authorized warrantless area searches incident to arrest. In this case, however, the defendant had not been arrested prior to the search of the interior of the car. Compare *Adams v Williams,* 407 US 143; 92 S Ct 1921; 32 L Ed 2d 612 (1972) where the person of the defendant seated in a car was properly searched under *Terry.*

[6] The propriety of the pat-down search is not before us. The government does not allege that seeing the folded knife on the floor of the car gave them probable cause to search the car. Thus *Robbins v California,* 453 US 420; 101 S Ct 2841; 69 L Ed 2d 744 (1981) is inapposite as the court in that case addressed the propriety of an automobile search conducted pursuant to probable cause.

[7] See *Government of Canal Zone v Bender,* 573 F2d 1329 (CA 5, 1978), a case involving similar circumstances.

[8] In *People v Reed,* 393 Mich 342, 362; 224 NW2d 867 (1975), we stated:

"A warrantless search and seizure is unreasonable per se and violates the Fourth Amendment of the United States Constitution and

deputies' search of the vehicle was proscribed by the Fourth Amendment to the United States Constitution and art 1, § 11 of the Michigan Constitution. The evidence obtained pursuant to the unconstitutional search should have been suppressed.

There remains the question of the validity of the search of the trunk. The people seek to justify the warrantless search either as an inventory search or as a search incident to arrest.

The search of the trunk occurred subsequent to the deputies' decisions to arrest the defendant for possession of marijuana and to impound the car. The defendant's arrest was based on evidence obtained by unlawful police action. We find that the evidence of marijuana found in the trunk was the "fruit" of that illegality which should have been suppressed. *Wong Sun v United States,* 371 US 471; 83 S Ct 407; 9 L Ed 2d 441 (1963).

The defendant's conviction is reversed.

WILLIAMS, LEVIN, FITZGERALD, and RYAN, JJ., concurred with KAVANAGH, J.

COLEMAN, C.J. *(dissenting).* We respectfully dissent. The search of defendant's vehicle and the seizure of the controlled substance did not violate the constitutional prohibitions against unreasonable searches and seizures, US Const, Am IV; Const 1963, art 1, § 11.

The facts are stated in the majority opinion. The majority opinion concludes that the officer's actions in examining the interior of the vehicle constituted a warrantless search not authorized by *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d

art 1, § 11 of the state constitution unless shown to be within one of the exceptions to the rule. * * * The burden is always on the state to show such an exception exists." (Citations omitted.)

889 (1968). We agree that this issue is governed by
the principles recognized in *Terry.*

I

In *Terry,* the Court upheld an officer's actions in
"patting down" or "frisking" a suspect's outer
clothing during an investigatory stop as a reason-
able protective search. The Court stated:

"Our first task is to establish at what point in this
encounter the Fourth Amendment becomes relevant.

*          *          *

"The distinctions of classical 'stop-and-frisk' theory
thus serve to divert attention from the central inquiry
under the Fourth Amendment—the reasonableness in
all the circumstances of the particular governmental
invasion of a citizen's personal security.

"In order to assess the reasonableness of Officer
McFadden's conduct as a general proposition, it is
necessary 'first to focus upon the governmental interest
which allegedly justifies official intrusion upon the con-
stitutionally protected interests of the private citizen,'
*          *          *.

*          *          *

"We are now concerned with more than the govern-
mental interest in investigating crime; in addition,
there is the more immediate interest of the police
officer in taking steps to assure himself that the person
with whom he is dealing is not armed with a weapon
that could unexpectedly and fatally be used against
him.

*          *          *

"We must still consider, however, the nature and
quality of the intrusion on individual rights which must
be accepted if police officers are to be conceded the right
to search for weapons in situations where probable
cause to arrest for crime is lacking. Even a limited
search of the outer clothing for weapons constitutes a
severe, though brief, intrusion upon cherished personal

security, and it must surely be an annoying, frightening, and perhaps humiliating experience.

\*   \*   \*

"Our evaluation of the proper balance .that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry, supra,* 16-27.

In *Adams v Williams,* 407 US 143, 146; 92 S Ct 1921; 32 L Ed 2d 612 (1972), the Supreme Court explained the role of a protective search, stating:

"The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence, and thus the frisk for weapons might be equally necessary and reasonable, whether or not carrying a concealed weapon violated any applicable state law. So long as the officer is entitled to make a forcible stop, and has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose."

## II

The majority begins the analysis with the premise that *Terry* authorizes only a limited "patdown" search of a person and not the search of an area. Without addressing the outer limits of the *Terry* rationale, we reject this distinction as unpersuasive. The opinion in *Terry* authorized the

frisking of an overcoat worn by defendant because that was the issue presented by the facts. One could reasonably conclude that a different result would not have been constitutionally required if the overcoat had been carried, folded over the forearm, rather than worn.[1] The constitutional principles stated in *Terry* would still control.

### III

The majority also concludes that the protective search rationale could not apply in this case because when defendant was standing next to the deputy at the rear of the vehicle, any weapon which may have been inside the car was out of the reach of the defendant and presented no danger, see *Government of Canal Zone v Bender,* 573 F2d 1329 (CA 5, 1978).

Other courts have upheld protective searches of the interior of a vehicle while the occupants were detained outside the vehicle. Emphasizing that the occupants were not under arrest at the time of the search and could have returned to the vehicle when the encounter with the officers ended, courts have upheld such protective searches, see *United States v Wilkerson,* 194 US App DC 393; 598 F2d 621 (1978), *United States v Powless,* 546 F2d 792 (CA 8, 1977), *cert den* 430 US 910; 97 S Ct 1185; 51 L Ed 2d 588 (1977), *United States v Thomas,* 314 A2d 464 (DC App, 1974), *United States v Green,* 151 US App DC 35; 465 F2d 620 (1972), *Brown v State,* 358 So 2d 596 (Fla App, 1978), *State v Darling,* 393 A2d 530 (Me, 1978), *Commonwealth v Almeida,* 373 Mass 266; 366 NE2d 756 (1977), *State*

---

[1] See *Bromwell v State,* 427 A2d 884 (Del, 1981), and the cases cited below.

*v Gilchrist,* 299 NW2d 913 (Minn, 1980), *State v Brown,* 160 NJ Super 227; 389 A2d 507 (1978), see also *Uptegraft v State,* 621 P2d 5 (Alas, 1980), *Williams v State,* 19 Md App 204; 310 A2d 593 (1973).

In contrast to the cases cited, the defendant in this case had an opportunity to enter his vehicle not only after the encounter ended, but also while it continued. Defendant was in the process of entering the vehicle to retrieve his registration records when the officer observed the knife on the floorboard. Defendant's entry into the vehicle would have permitted him to gain possession of any readily accessible weapons in the vehicle. Accordingly, we cannot summarily reject plaintiff's claim that *Terry* authorizes a protective search of the vehicle on the basis that no possible danger was present. If the possibility that a suspect will re-enter his vehicle after an encounter ends is sufficient to support a *Terry* protective search, the fact that he is attempting to enter the vehicle while the confrontation continues is also sufficient.

## IV

Therefore, the Court must determine whether the justifications for a *Terry* search, the protection of the officers and others, justifies the officer's actions.

In the instant case, the officers were confronting a traffic offense suspect whose car ended up in a ditch. After meeting the deputies at the rear of his car, defendant failed to respond to their questions. Finally, defendant began walking back toward his driver's door. The defendant appeared to be under the influence of something and acted scared. Ap-

proaching the open door, the officer saw a knife on the floorboard.

These observations gave the officers reason to believe they were dealing with an armed and dangerous person. A reasonably prudent officer would be warranted in believing that he was in danger. Therefore, the officer was permitted to conduct a *Terry* search.

After picking up the knife, one officer shone his flashlight at the interior of the vehicle.[2] He saw a leather pouch under the driver's armrest large enough to hold a weapon. He raised the armrest and observed an open leather pouch containing a plastic bag of marijuana.

Considering all the circumstances, including that one weapon had already been found and that the leather pouch was large enough to hold another, the officer could have reasonably concluded that safety required further investigation. The lifting of the armrest was an action reasonably designed to uncover a hidden weapon. This action would permit the officer to investigate further by observing whether the contents of the pouch could be inferred from its outward appearance (for example, a gun case or holster), see *Arkansas v Sanders,* 442 US 753, 764-765, fn 13; 99 S Ct 2586; 61 L Ed 2d 235 (1979), or by patting down or frisking the pouch.

The lifting of the armrest is similar to an officer's conduct in feeling under a seat or dashboard or lifting a rug. These actions have been upheld in

---

[2] Defendant does not argue that this action was an unconstitutional search, see *People v Whalen,* 390 Mich 672; 213 NW2d 116 (1973).

a variety of cases when conducted as a protective search, see *Wilkerson, supra, Powless, supra, Thomas, supra, Green, supra, Brown, supra, Darling, supra, Almeida, supra, Gilchrist, supra.* Without determining the constitutionality of all these actions in every case, because such issues are not present in this case, the cases cited support the conclusion that, on the facts of the instant case, the officer was warranted in believing that safety required that the armrest be lifted.

In contrast to the gravity of the dangers confronting the officers, the raising of the armrest was a minimal intrusion into defendant's legitimate expectation of privacy. The area underneath an armrest is not a residence or a common repository for personal effects referred to in *Sanders, supra.* Rather, it is part of an automobile with "the diminished expectation of privacy which surrounds the automobile", *Robbins v California,* 453 US 420; 101 S Ct 2841; 69 L Ed 2d 744 (1981) (opinion of Stewart, J.), *United States v Chadwick,* 433 US 1, 12-13; 97 S Ct 2476; 53 L Ed 2d 538 (1977).

While upholding the constitutionality of a frisk as a protective search, the Supreme Court recognized that

"[e]ven a limited search of the outer clothing for weapons constitutes a severe, though brief, intrusion upon cherished personal security and it must surely be an annoying, frightening and perhaps humiliating experience." *Terry, supra,* 24-25.

We conclude that the lifting of the armrest was a minimal intrusion into defendant's privacy compared to the intrusions upheld in *Terry.* The raising of the armrest as a protective search in this

case was not an unreasonable search prohibited by US Const, Am IV; Const 1963, art 1, § 11.

Once the armrest was lifted, the contents of the open pouch, a plastic bag containing marijuana, were in the plain view of the officer. The officer properly seized the contraband and arrested defendant, *Harris v United States,* 390 US 234; 88 S Ct 992; 19 L Ed 2d 1067 (1968).

A review of the other issues raised by defendant discloses no reversible error, see *South Dakota v Opperman,* 428 US 364; 96 S Ct 3092; 49 L Ed 2d 1000 (1976).

BLAIR MOODY, JR., J. *(concurring in result).* I concur with the result reached by the majority opinion. However, in contrast to my brothers, I agree in general with the analysis formulated in the opinion of Chief Justice COLEMAN, with the exception of the last paragraph. The marijuana found on the front seat of the automobile was legally seized, whereas the marijuana discovered in the trunk was unlawfully obtained.

The defendant was in the process of going into the interior of the automobile in search of the registration and insurance certificates requested by an investigating officer. At that point the officer saw a knife that was in "plain view". It was the initial discovery of the knife that reasonably led the officers to conduct the *Terry*[1] search of the person.

Thereafter, it was reasonably appropriate and entirely consistent with the principles announced in *Terry* for the officer to conduct a brief search of the interior of the automobile for weapons, limited to areas in which a weapon could be concealed, yet accessible. The officer testified that he looked for

---

[1] *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968).

another weapon. The contemporaneous search of the interior of the automobile, under the facts of this case, was confined in scope reasonably designed to discover additional hidden instruments for potential assault upon the police officers. Otherwise, the officers might be endangered if the occupant were permitted to re-enter the vehicle to gather requested information or to drive away at a later point. The initial discovery of the knife provided sufficient cause to permit the reasonable search for additional weapons.

Accordingly, discovery of the marijuana, visible under the driver's armrest on the front seat of the car, gave probable cause for an arrest and was properly introduced into evidence.

However, a different question is presented regarding the marijuana discovered in the trunk of the car. The prosecution limits its argument to the effect that the marijuana discovered in the trunk of the car was validly seized pursuant to a proper inventory search following defendant's arrest and a deputy's decision to impound the subject vehicle.[2] Relying upon *South Dakota v Opperman,* 428 US 364; 96 S Ct 3092; 49 L Ed 2d 1000 (1976), the prosecution contends that "[w]arrantless inventory searches of impounded cars are a proper caretaking function of the police".

Yet, *Opperman* and the instant case involve clearly distinguishable fact situations. Accordingly,

---

[2] Plaintiff, in a brief footnote, concludes that the search of a trunk may have *arguably* been a search incident to defendant's arrest. We decline to rule on that question as the argument is not relied upon or developed in this case. Nor does the plaintiff rely upon the "automobile exception" to the warrant requirement in order to justify the search of the trunk. *Cf. United States v Ross,* — US —; 102 S Ct 2157; — L Ed 2d — (1982) (search of closed container in automobile). Furthermore, *Ross* and the "automobile exception" do not address inventory searches. *Id.,* p —, fn 11.

We assume for the purpose of discussion that the decision to impound the automobile was proper in this case.

the reasoning set forth in *Opperman* does not apply. Therefore, the search of the trunk in the instant case was unreasonable and violated the Fourth Amendment to the United States Constitution.

In *Opperman,* defendant's illegally parked car was towed to a city impound lot where a police officer observed a watch on the car's dashboard and other items of personal property located in the passenger area of the car. These items were visible from outside the car. A police officer inventoried the contents of the automobile using a standard inventory form pursuant to standard procedures of the local police department. Marijuana was found in the unlocked glove compartment. The impound lot in question had been the scene of thefts of items from cars and testimony revealed that it was "the old county highway yard. It ha[d] a wooden fence partially around part of it, and kind of a dilapidated wire fence, a makeshift fence." 428 US 366, fn 1. Neither the owner, nor anyone else was present when the decision was made to impound the vehicle. The locked trunk of the vehicle was not searched.[3]

The plurality opinion in *Opperman* concluded that an inventory search without a warrant was not "unreasonable" and did not violate the United States Constitution.[4] That opinion emphasized that

---

[3] In the instant case the unlocked trunk was searched. In *Opperman,* the unlocked glove box was searched, but not the locked trunk. The fact that a trunk was searched in the instant case does not by itself suggest an unreasonable search. It could be argued that it is more reasonable to inventory an unlocked trunk than a locked trunk.

[4] US Const, Am IV provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

A number of courts have interpreted the search and seizure provi-

the owner was not present to make other arrangements for the safekeeping of his property. Items of personal property were visible from the outside of the car. Furthermore, this was a routine administrative caretaking function performed pursuant to standard departmental procedures at the impound lot.

The concurring opinion of Justice Powell emphasized that "the search here was limited to an inventory of the unoccupied automobile and ·was conducted strictly in accord with the regulations of the Vermillion [South Dakota] Police Department". 428 US 380. Justice Powell agreed that the constitution permits routine inventory searches. As he observed, "[i]nventory searches are conducted in accordance with established police department rules or policy and occur whenever an automobile is seized." 428 US 383. "Upholding searches of this type provides no general license for the police to examine all the contents of such automobiles." 428 US 380. In concluding that a warrant was unnecessary, he also noted that in the inventory search context the owner or occupant of the vehicle is not present, nor is there usually any real likelihood that he could be located within a reasonable period of time. Thus, according to Justice Powell, the concerns which prompted the Supreme Court of the United States to require a warrant in the context of other administrative searches[5] are absent. Furthermore,

sions of state constitutions in a more restrictive manner and have refused to permit various inventory searches. *E.g., State v Opperman,* 247 NW2d 673 (SD, 1976), and *State v Sawyer,* 174 Mont 512; 571 P2d 1131 (1977) (inventory search restricted to safeguarding articles in plain view), *Miller v State,* 403 So 2d 1307 (Fla, 1981) (advice must be given to owner or possessor, if present, that vehicle will be impounded unless such person provides a reasonable alternative).

[5] See, *e.g., Camara v San Francisco Municipal Court,* 387 US 523; 87 S Ct 1727; 18 L Ed 2d 930 (1967).

and "[m]ore importantly, no significant discretion is placed in the hands of the individual officer". 428 US 384.

The apparent difference between these opinions in *Opperman* is that the plurality opinion determines that a true inventory search is not "unreasonable" and thus is constitutionally permissible. The warrant clause[6] is not implicated by this analysis. In contrast, Justice Powell concludes that the dictates of the warrant clause must be considered to determine whether a search is reasonable. In almost all cases, he notes, a search without a valid consent is unreasonable unless authorized by a search warrant.

In comparing the facts in *Opperman* and those in the instant case, significant differences emerge. In the instant case, an occupant of the car was present at the time of the asserted impoundment. He was not asked whether he wished the car to be inventoried.[7] The impound lot in the case at bar was the underground garage of the sheriff's department. The car was secured at this well-protected site. This was a far different type of lot than the one involved in *Opperman* and suggests that an inventory search conducted at the scene of the arrest or at a well-protected lot is not as reasonable in the instant situation since the car would have been secure in any event.[8]

[6] See fn 4.

[7] The dissenting opinion of Justice Marshall in *Opperman* would require police officers under the facts presented to reach the owner and obtain consent for a search. If specific cause requires a search to preserve the integrity of particular valuable property, no search could be performed absent explicit consent for the search or an attempt to get such consent. 428 US 393-394. The plurality opinion rejects this consent theory. 428 US 376, fn 10. In *Opperman,* unlike the instant case, no one was readily available to give consent.

[8] The car was so secure in the garage that the marijuana was left in the unlocked trunk overnight. The marijuana was in the control of the officers until it reached the garage since the officers followed the wrecker as it towed the vehicle to the garage.

Most importantly, no standard departmental policy was followed, and no inventory form was introduced. Although the officer testified as to his personal "standard" procedure, this procedure does not meet the requirements of reasonableness as suggested in *Opperman.* A standard departmental practice gives some assurance that the particular vehicle or part of the vehicle was not singled out for a search based upon an improper motive.[9] Without a departmental policy, too much discretion is placed in the hands of a police officer. His decision to search may be an arbitrary one.

Whether the *Opperman* rationale or a more restrictive interpretation of the Michigan Constitution is to be adopted by this Court is left for future determination. Nevertheless, as one commentator concluded after reviewing *Opperman:*

"What is needed in the vehicle inventory context, then, * * * is not probable cause but rather a regularized set of procedures which adequately guard against arbitrariness.

\* \* \*

"Inventories should not be upheld under *Opperman* unless the government shows that there exists an established reasonable procedure for safeguarding impounded vehicles and their contents and that the challenged police activity was essentially in conformance with that procedure. This means that a purported inventory should be held unlawful when it is not shown, 'for [instance], that standard inventory forms were completed and kept for future reference (showing presence or absence of valuables), nor that a place òf

---

[9] As to motive, the Court of Appeals opinion states:

"Deputy Howell testified that his inspection of the vehicle's trunk was motivated by a belief that discovery of the plastic bag of marijuana inside the car suggested the possibility of additional marijuana in the trunk, and because it was his policy to check for valuables to protect himself against subsequent claims by the vehicle's owner." *People v Long,* 94 Mich App 338, 348; 288 NW2d 629 (1979).

safekeeping for valuables so secured was maintained.'"
2 LaFave, Search and Seizure, § 7.4, pp 576-577, quoting
*State v Jewell,* 338 So 2d 633, 639 (La, 1976).

Accordingly, the procedures followed in this case
fail even to measure up to *Opperman's* require-
ments.

For the foregoing reasons, the marijuana that
was found in the trunk should not have been
admitted into evidence at trial. The error was not
harmless. Accordingly, I agree with the result
reached by the majority opinion that the decision
of the Court of Appeals must be reversed.